## Pennsylvania Power Co., Appellant, *v.* Public Service Commission (No. 1).

*Corporations — Water companies — Application for charter — Requisites of—Act of June 7, 1907, P. L. 455—Public Service Commission.*

Under the Act of June 7, 1907, P. L. 455, which requires that an application for a charter for a water company shall state the name "of the river, stream, or other body of water from which it is proposed to take or use water, or water power, and as near as may be. the points on said river, stream or other body of water between which said water, or water power is proposed to be taken," the precise location of a dam or dams proposed to be built need not be set forth.

If an application for a charter for a water company sets forth the name of a stream, and states that it is proposed to construct a dam or dams across the stream located between two points designated, and such application has been approved by the water supply

commission after the consideration of plans showing a certain number of dams at designated points, the Public Service Commission may subsequently, in passing upon the incorporation of the company, approve of the application although an amended plan is produced to them showing a smaller number of dams, and that one of the proposed dams would be constructed at a less height than that shown on the original plan.

The Public Service Commission is not invested with authority to regulate the erection of dams or the development of the water power resources of the State; that is a subject over which the Water Supply Commission has jurisdiction, and such commission may pass upon the final plans after the incorporation of the company, and when its work is undertaken.

The Superior Court will not reverse an order approving the incorporation of a water company where it appears that the application had been approved by the water supply commission, that the Public Service Commission had heard evidence relating to the question in controversy, that elaborate arguments were presented, and that the action of the water supply commission was considered, and such presentation of the facts made as enabled the Public Service Commission to act intelligently on the subject.

An order of the Public Service Commission approving an application for a charter of a water company will not be reversed at the instance of an older company supplying power merely because the new company would be competitor in a field theretofore exclusively occupied by the older company, and that such competition was contrary to the policy of the law. It is not a matter of public policy to prohibit competition.

The question of intrusion is a subject for consideration by the Public Service Commission when the new company shall in the development of its business propose to supply power.

The order of the Public Service Commission approving the incorporation of a water company will not be reversed at the instance of the intervening landowners on the allegation that the commission did not open the hearing for the purpose of taking testimony in support of the averments in the petition of the intervenors, where it appears that notice of the hearing had been given, that the intervenors did not appear until the testimony had been concluded, and that the matters alleged had been brought to the attention of the commission, and considered by it.

The fact that notice of an application of a water company for a charter does not conform to the rule prescribed by the Public Service Commission, is not a ground for reversing the order approving the application, where it appears that the commission held

that the notice was sufficient, and that the parties in interest had been heard, and all the questions raised had been considered.

The notice prescribed by the commission was adopted to secure uniformity in the procedure for a charter merely, and has not the effect of positive law.

Argued Dec. 8, 1916. Appeal, No. 9, March T., 1917, by Pennsylvania Power Co., protestant, from order of Public Service Commission approving application of charter in case of Pennsylvania Power Company v. The Public Service Commission of the Commonwealth of Pennsylvania. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Application for approval of charter.

From the record it appeared that the material portions of the application were as follows:

"1st. The name of the proposed corporation is CONOQUENESSING POWER COMPANY.

"2d. Said corporation is formed for the purpose of the supply, storage or transportation of water and water power for commercial and manufacturing purposes in the Township of Wayne, County of Lawrence and State of Pennsylvania.

"3d. The name of the river, stream, or other body of water, from which it is proposed to take or use water and water power, and, as near as may be, the points on said river, stream, or other body of water, between which said water and water power is proposed to be taken, or used, is as follows, viz: It is proposed to take and store the waters of the Conoquenessing creek and its tributaries by means of a dam or dams across said stream located between the mouth of said Conoquenessing creek at its junction with the Beaver river and a point at or near the mouth of Slippery Rock creek, a tributary of said Conoquenessing creek in Wayne Township, Lawrence County, Pennsylvania, in a reservoir, extending up and along said Conoquenessing creek to Walker's Mill, North Sewickley Township, Beaver County.

"It is also proposed to take and store the waters of Brush creek, a tributary of the said Conoquenessing creek by the construction of a dam across said Brush creek, at a point two and one-half (2½) miles from its mouth in the Township of Marion, Beaver County, in a reservoir extending up and along said Brush creek for a distance of eleven (11) miles.

"It is also proposed to take and store the waters of the Little Conoquenessing creek, a tributary of the said Conoquenessing creek by the construction of a dam across said Little Conoquenessing creek at a point two (2) miles from its mouth in Jackson Township, Butler County, in a reservoir extending up and along said Little Conoquenessing creek, for a distance of nine (9) miles.

"4th. The business of said corporation is to be transacted in Pittsburgh, Pennsylvania."

The original protest of the Pennsylvania Power Company set forth that it was a hydro-electric company existing under and by virtue of the laws of Pennsylvania, and that it had a hydro-electric plant at Ellwood City, Lawrence County, Pennsylvania, where it generated electrical current for sale in the boroughs, cities and townships of the State. That the service rendered by it was reasonable and adequate, and that the rates were just and reasonable. That the incorporation of the applicant would seriously interfere with the water rights, dams, power houses and facilities of the protestant; and further that the incorporation of the applicant is neither necessary or proper, because the protestant is already willing to offer all the prospective customers in this district a reasonable and adequate service at reasonable rates, and the incorporation of the applicant would only lead to ruinous competition.

The protest ended with a prayer that the protestant be allowed to submit evidence of its contention and that no final action be taken until it had an opportunity to be heard.

To the amended application the protestant filed an-

other protest, wherein all the original reasons were reaffirmed. In addition, it was pointed out that the rules of practice had not been complied with, that the statement of the purpose of the company was not in accordance with the articles of association as certified by the secretary of the Commonwealth, and in general that the application was so indefinite that the commission could not entertain the application.

After several hearings the commission handed down pro forma report and order, in which it was stated that the Pennsylvania Power Company had appeared as a protestant and after a hearing the commission found and determined that the granting of the application is proper for the service, accommodation, convenience and safety of the public and a certificate of public convenience should issue evidencing the approval of the incorporation. A certificate of public convenience was issued.

From this report and order and certificate of public convenience the Pennsylvania Power Company as a protestant appealed.

*Errors assigned* by the Pennsylvania Power Co. were as follows:

1. The Public Service Commission did not have jurisdiction over the said application for the reason:

(a) That the existing laws relative to the incorporation, organization and creation of such companies were not complied with, prior to and in the application presented to the Public Service Commission.

(b) That it was not in compliance with the rules of practice and procedure of the Public Service Commission.

(c) That it did not give the interested parties proper notice of the true character of the application.

(d) That it did not give the Public Service Commission proper and necessary information upon which to act.

2. That the findings and order are arbitrary, unrea-

sonable and not in conformity with law, for the reason that there was no evidence to sustain the Public Service Commission.

3. That under all the evidence presented, the findings and order are arbitrary, unreasonable and not in conformity with law, for the reason that the applicants presented no evidence in support of the application.

4. That under all the evidence presented, the finding and order are arbitrary, unreasonable and not in conformity with law, for the reason that they are contrary to the manifest weight of the evidence presented by the protestants.

5. That the findings and order are arbitrary, unreasonable and not in conformity with law, for the reason that there was absolutely no evidence to show the existence of any present unsupplied demand for electric power in the localities wherein the applicants intend to operate.

6. That the findings and order are arbitrary, unreasonable and not in conformity with law, for the reason that there was absolutely no evidence to show that the applicants would produce electric power at a cost equal to or less than that produced by the protestants.

7. That the Public Service Commission erred in finding and determining that "the granting of this said application is proper for the service, accommodation, convenience and safety of the public."

8. That the Public Service Commission erred in entering the following order: "Now, to wit, May 10, 1916, It is ordered: That a certificate of public convenience be issued evidencing the commission's approval of the said incorporation," a copy of said findings and report is attached and marked Exhibit B.

9. That the Public Service Commission erred in issuing a certificate of public convenience in the form and manner referred to in Paragraph 3 hereof, a copy of which certificate of public convenience is attached and marked Exhibit C.

*Errors assigned* by R. C. Coleman et al. Intervenors, were as follows:

1. The Public Service Commission erred in not reopening the hearing for the purpose of taking the testimony of these petitioners, and in refusing to give them an opportunity to be heard in support of the allegations set forth in their petition to the Public Service Commission to intervene as parties protestant. 82a.

2. The Public Service Commission erred in entering the following order: "Now, to wit, May 10, 1916, It is ordered: That a certificate of public convenience be issued, evidencing the commission's approval of the said incorporation," without hearing the proofs proposed to be offered by the petitioners as to the damage that will result to towns, flouring mills, churches, cemeteries, schools, highways, bridges and. the private property of the petitioners.

3. The Public Service Commission erred in not reopening the hearing for the purpose of taking the testimony in support of the allegations set forth in the petition to the Public Service Commission, the petitioners being interested and who had no notice as required by law, and the rules of the Public Service Commission until hearings for the purpose of taking testimony had been closed. 82a.

4. The Public Service Commission erred in making no finding or order on the application of the petitioners to intervene as parties protestant. (82a)

*Ralph J. Baker,* with him *Douglass D. Storey* and *Frederic W. Fleitz,* for Pennsylvania Water Power Company, appellant.—The appellant is entitled to maintain these appeals: Chester County Gas Co. v. Merion & Radnor Gas & Electric Co., 16 Dist. 214; Bethlehem City Water Co. v. Bethlehem Borough, 253 Pa. 333.

Neither the articles of association appellees had made, the Water Supply Commission's approval they had obtained, nor any other thing in law, gave any warrant

whatsoever for which they stated they were going to do. They announced to the Public Service Commission that they were going to act in violation and disregard of law, and asked the commission's approval to a mere facially valid record of incorporation that they might use it as a cloak to their unlawful actions.

*Robert K. Aiken,* with him *Lawrence M. Sebring,* for intervenor appellants.—Legal notice must be certain, not vague; it must be by direct information, such as will arrest the attention and make it a duty to receive the notice: Peoples Bank of Philadelphia v. Etting, 17 Philadelphia 223; Black v. Roebuck, 17 Pa. Superior Ct. 324; Ferry Co.'s Charter, 2 Chester Co. 91; Parish M. E. Church Incorporation, 3 Kulp 128.

*J. E. B. Cunningham,* with him *Frank M. Eastman* and *Joseph H. Thompson,* for Conoquenessing Power Company.

*Berne H. Evans* and *William N. Trinkle,* for the Public Service Commission.

OPINION BY HENDERSON, J., May 7, 1917:

This case comes up by appeal of the Pennsylvania Power Company from an order of the Public Service Commission approving the incorporation of the Conoquenessing Power Company, the object of which is the supply, storage or transportation of water and water power for commercial and manufacturing purposes in the Township of Wayne in the County of Lawrence. The plan involves the construction of a dam or dams on Conoquenessing creek and the development of electrical power by means of water power as authorized by the Act of July 2, 1895, P. L. 425. The appellant is a power company owning a dam in Conoquenessing creek at Ellwood City at which it has a power plant for the generation of electricity which it supplies to Ellwood

City and other places in the vicinity.   R. C. Coleman
and six other persons, owners of farms in New Sewick-
ley Township, Beaver County, through whose lands
Brush creek, a tributary of Slippery Rock creek, runs,
were on their petition permitted to intervene as appel-
lants after the appeal taken by the Pennsylvania Power
Company.   The complaint of the appellant is that the
findings and determinations of the commission are not
in conformity to law and are unreasonable and based
on incompetent testimony materially affecting the find-
ings and determinations.   The lack of conformity to law
relied on, it is urged by the appellant, is found in the
discrepancy between the project in the articles of asso-
ciation approved by the Water Supply Commission and
the plan presented to the Public Service Commission.
The promoters of the new company presented their plan
to the Water Supply Commission as required by the Act
of June 7, 1907, P. L. 455, which body approved of the
project after a protracted examination and consideration
of the scheme in the course of which there was submitted
a plan for the development of the water power of Cono-
quenessing creek and some of its tributaries according to
which it was proposed to work in the practical operation
of the company when incorporated.   After the approval
of the plan by the Water Supply Commission and a more
definite consideration of the subject it was deemed ad-
visable to change the plan so that a smaller number of
dams would be erected and a dam on the creek near its
confluence with the Beaver river would be constructed
of a less height than was first proposed.   This amended
plan the appellant contends was a different one in es-
sential respects from that placed before the Water Sup-
ply Commission and their application to the Public Serv-
ice Commission was for the approval of "a mere facially
valid record of incorporation so they might use it as a
cloak to their unlawful actions."   The argument is based
in part on the assumption that the application for such
a charter should specify the exact rivers, etc., and the

"precise points" thereon where the water or water power is to be taken. The first section of the Act of 1907 provides that "no application for a charter for a corporation for a supply of water for the public or for the supply, storage and transportation of water or water power for commercial and manufacturing purposes or for any other water or water power company shall be approved by the governor nor shall letters patent be issued thereon unless said application is first submitted to and has received the approval of a majority of the members of the Water Supply Commission, nor unless such application shall contain in addition to the statements now required to be made the name of the river, stream or other body of water from which it is proposed to take or use water or water power and as near as may be the points on said river, stream or other body of water between which said water or water power is proposed to be taken." It was manifestly not the intention of the legislature to require that the precise location of a dam should be fixed by law before the incorporation of the company. The location was only to be stated "as near as may be." It is easily seen that it might be ascertained from a test that the particular site selected was not suitable for the support of a dam wall and that a change of place would be necessary. Some leeway was therefore allowed to meet such or perhaps other contingencies. Moreover, the Act of June 25, 1913, P. L. 555, regulates the construction of dams and provides that none shall be erected without the consent or permit of the Water Supply Commission in writing previously obtained. It is further provided that the commission shall have power not only to grant or withhold consent but may incorporate and make a part of said consent or permit such conditions, regulations and restrictions as may be deemed by it advisable; and no construction of such works shall be undertaken or prosecuted except in accordance with the terms, conditions, regulations and restrictions of such consent or permit and such rules and regulations with regard there-

to as may be prescribed by the commission. It will be seen, therefore, that the matter of definite plans for the development of the work of a water power company is subject to the control of the Water Supply Commission which control is to operate after the incorporation of the company and when its work is undertaken. The Public Service Commission in approving the charter did not include the approval of a plan for the development of the company's business. It is not invested with authority to regulate the erection of dams or the development of the water power resources of the State. That is a subject over which the Water Supply Commission has jurisdiction. The suggested change in the plan as to the number of dams or the height of the dams as made to the Public Service Commission was not a matter of consequence, therefore, nor in any sense illegal. The authority of the Water Supply Commission to impose regulations and conditions to be observed by a corporation proposing to develop the water power of a stream is broad as shown by the language of the statute. It is unnecessary to here consider its extent. It has undoubted authority to attach any of the conditions necessary to carry out the purposes of the legislation on the subject with a view to the protection of the rights of the public and of individuals or companies having vested interests.

It is further objected that the order was made without evidence or against the weight of the evidence. An examination of the voluminous record does not lead us to that conclusion. The applicants for the charter had the deliberate approval of their plan by the Water Supply Commission. Evidence was taken on the questions involved and the commission was aided by the discussion of able counsel on the respective sides. The statute does not declare what evidence shall be sufficient to induce the commission to act; nor does it require that evidence be taken under all circumstances. Some applications may be of such character as to render that course entirely unnecessary. The geographical and topograph-

ical conditions involved in such a case may be within the knowledge of members of the commission and it would be manifestly impracticable to declare by legislative enactment or judicial decree just how the Public Service Commission should acquire the information which would lead it to a determination of a particular case. Section 18 of Article V of the statute provides that "when applications shall be made to the commission by any public service company for any approval under any of the provisions of this act......such approval in each and every such case or kind of application shall be given only if and when the said commission shall find or determine that the granting or approval of such application is necessary or proper for the service, accommodation, convenience or safety of the public." The nineteenth section of the same article authorizes the commission to hold such hearings and to examine such witnesses and make such inquiries, physical examinations, valuations and investigations as it may deem necessary or proper in enabling it to reach a determination. It is sufficient to say with respect to the pending controversy that there was evidence before the commission which was heard, that elaborate arguments were presented; that the action of the Water Supply Commission was considered and such a presentation of the facts made as enabled the Public Service Commission to act intelligently on the subject. It is not the function of this court on such an appeal to reverse the action taken because a different result might have been reached with greater propriety.

It is further urged that the granting of the application ought not to be approved because it does not appear in the case that it was proper for the accommodation, convenience or safety of the public, the substance of the appellant's argument being that there is evidence of adequate service of electrical power in the district proposed to be served by the Conoquenessing Power Company; that the new company will be a competitor in a field theretofore exclusively occupied by the appellant and

that such competition is contrary to the policy of the law. With respect to this objection it may be said that it is not a matter of public policy to prohibit competition. It has not been declared by the legislature nor decided by the courts that a public service company entering into business in a particular locality necessarily acquires an exclusive and permanent right to the prosecution of a business of that kind.over an area which it might consider its exclusive territory. Moreover, the matter of intrusion into the appellant's locality is a subject for consideration by the Public Service Commission when the company shall have reached a stage in the development of its business where it proposes to supply power. It was probably apparent to that body there was a large field in that section of the State for the use of electricity and that the increase of the supply would stimulate the development of manufactories. It was not shown in the case, and the fact probably does not exist in the Commonwealth, that there is an excess of power for industrial activity. It may be as contended that the cost of the proposed enterprise will be such that the returns from the investment will be unprofitable. That is a matter for future determination, of course, but we think the commission can not be expected to have a demonstration of the financial possibilities of an enterprise before it gives its approval thereto. It does not warrant the success of such a project.

The complaint of the intervening appellants is that the Public Service Commission did not open the hearing for the purpose of taking testimony in support of the allegations set forth in their petition to the Public Service Commission and that the commission erred in entering the order of May 10, 1916, approving the incorporation of the water power company. The answer of the Public Service Commission to the petition of the land owners to intervene sets forth that the order of the commission was made "after public hearing held upon due notice and after careful consideration of all evidence which could

in any wise affect the decision of the commission" and in reply to the complaint of the refusal of the commission to open the hearing the answer avers "that notice of the hearing on the application before it, was given as required by law; that the petitioners did not avail themselves of the opportunity presented to appear before the commission until the testimony had been concluded and that proof of the matter raised by the petitioners here could not have altered the decision of the commission for the reason that the facts stated had been brought to the attention of the commission and considered by it and were not material or relevant to the issue raised by the petition for a certificate of public convenience." It thus appears that the subject in which the intervenors were interested was brought to the attention of the commission, was discussed before the commission and that the order was made in the light of the conditions existing on the ground. It is further to be noted that the work contemplated by this power company does not include the erection of dams on Brush creek and that any dams to be hereafter erected are to be subject to the approval of the Water Supply Commission. The rights of the intervenors as land owners are protected by the statutes authorizing the creation of the company: Brumbaugh v. Raystown Water Power Co., 254 Pa. 215. There is no ground for a supposition that the action of the Public Service Commission would have been affected by additional evidence as to the relation of the water power project to the property of the landowners on Brush creek. The notice of the application of the water power company for a charter did not conform to the rule prescribed by the Public Service Commission but that rule was adopted to secure uniformity in the procedure for a charter merely and has not the effect of positive law. The commission has held the notice to be sufficient, the parties in interest have been heard, all the questions raised have been considered and on the facts presented the action of the Public Service Commission can not be held

to be illegal.   That it is unreasonable has not been made clear.   After a review of the whole case we are of the opinion that the order of the Public Service Commission should be approved and the appeal dismissed at the cost of the appellant.   It is so ordered.

