## Water and Power Resources Board.

SCHNADER, Special Dep. Att'y-Gen., May 12, 1930.—We have your request to be advised regarding the extent of your board's power in administering the provisions of the Act of June 25, 1913, P. L. 555.

You inquire specifically whether your board, in passing upon an application for a dam, is limited to the consideration of the dam from a structural or engineering standpoint; or whether broader powers are conferred upon your board by the act, making it the board's duty to consider the effect of the proposed structure upon the regimen and use of the stream. You would like to know whether your board has the power to issue a conditional permit or disapprove an application if it is convinced that the proposed dam will injuriously affect navigation, increase the height of floods in built-up communities or be prejudicial to the best interests of the Commonwealth for reasons not actually related to the stability of the structure.

The Act of 1913 is entitled "An act providing for the regulation of dams, or other structures or obstructions, as defined herein, in, along, across or projecting into all streams and bodies of water wholly or partly within, or forming part of the boundary of, this Commonwealth. . . ." Its 1st section defines the words "water obstruction" as including "any dam, wall, wing-wall, wharf, embankment, abutment, projection, or similar or analogous structure, or any other obstruction whatsoever, in, along, across, or projecting into any stream or body of water. . . ." "Construct" is defined as meaning "construct, erect, build, place, or deposit."

Section 2 provides that:

". . . it shall be unlawful for any person or persons, partnership, association, corporation, county, city, borough, town, or township to construct any dam or other water obstruction; or to make or construct, or permit to be made or constructed, any change therein or addition thereto; or to make, or permit to be made, any change in or addition to any existing water obstruction; or in any manner to change or diminish the course, current, or cross

section of any stream or body of water, wholly or partly within, or forming a part of the boundary of, this Commonwealth, except the tidal waters of the Delaware River and its navigable tributaries, without the consent or permit of the Water Supply Commission of Pennsylvania, in writing, previously obtained. . . ."

Section 3 requires every application for a consent or permit to be accompanied by complete maps, plans, profiles and specifications of the proposed obstruction or the changes or additions to be made therein "and such other data and information as the commission may require."

Section 4 empowers the commission "to grant or withhold such consent or permit" and to "incorporate in and make a part of said consent or permit such conditions, regulations and restrictions as may be deemed by it advisable." It then provides that it shall be unlawful to commence the construction of any water obstruction or any change or addition thereto "except in accordance with the terms, conditions, regulations and restrictions of such consent or permit, and such rules and regulations, with regard to said constructions, changes, or additions, as may be prescribed by the commission."

Section 7 renders it a misdemeanor for any person or entity subject to the provisions of the act to do or cause to be done, or to fail, neglect or refuse to do, or cause to be done, any act or thing contrary to the provisions of the act.

By section 202 of The Administrative Code of 1923 (Act of June 7, 1923, P. L. 498) the name of the Water Supply Commission was changed to Water and Power Resources Board, and the board was constituted a departmental administrative board within the Department of Forests and Waters. By section 1608 of the same act it was provided that the Water and Power Resources Board should have the power and its duty should be:

"(a) Subject to any inconsistent provisions in this act contained, to continue to exercise the powers and perform the duties by law vested in and imposed upon the Water Supply Commission of Pennsylvania with regard to:

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"4. Consents or permits for the construction of dams and other water obstructions or of any change therein or addition thereto, and consents or permits for changing or diminishing the course, current, or cross section of any stream or body of water; . . ."

Section 1808 of The Administrative Code of 1929 (Act of April 9, 1929, P. L. 177), repeats in the same language the last quoted provision.

There has, therefore, been no change in the authority conferred upon your board by the Act of 1913, as the result of the passage of The Administrative Codes of 1923 and 1929. Your board has the same power and the same duties as were vested in and imposed upon the Water Supply Commission when the Act of 1913 was originally enacted.

There has been no court decision or opinion of this Department which has specifically answered the inquiry under consideration. There have, however, been several expressions of our appellate courts with reference to the effect of the Act of 1913, which indicate the judicial attitude towards its scope.

In Pennsylvania Power Co. v. Public Service Commission (No. 1), 66 Pa. Superior Ct. 448, Judge Henderson said, at page 457:

". . . the Act of June 25, 1913, P. L. 555, regulates the construction of dams and provides that none shall be erected without the consent or permit of the Water Supply Commission in writing previously obtained. It is further provided that the commission shall have power not only to grant or withhold consent but may incorporate and make a part of said consent or permit such conditions, regulations and restrictions as may be deemed by it advisable;

and no construction of such works shall be undertaken or prosecuted except in accordance with the terms, conditions, regulations and restrictions of such consent or permit and such rules and regulations with regard thereto as may be prescribed by the commission. It will be seen, therefore, that the matter of definite plans for the development of the work of a water power company is subject to the control of the Water Supply Commission, which control is to operate after the incorporation of the company and when its work is undertaken. The Public Service Commission in approving the charter did not include the approval of a plan for the development of the company's business. It is not invested with authority to regulate the erection of dams *or the development of the water power resources of the state. That is a subject over which the Water Supply Commission has jurisdiction.* The suggested change in the plan as to the number of dams or the height of the dams as made to the Public Service Commission was not a matter of consequence, therefore, nor in any sense illegal. The authority of the Water Supply Commission to impose regulations and conditions to be observed by a corporation proposing to develop the water power of a stream is broad, as shown by the language of the statute. It is unnecessary to here consider its extent. *It has undoubted authority to attach any of the conditions necessary to carry out the purposes of the legislation on the subject with a view to the protection of the rights of the public and of individuals or companies having vested interests."*

The opinion of the Superior Court in this case was affirmed by the Supreme Court in a *per curiam* opinion at 261 Pa. 211.

In Com. *v.* Pennsylvania R. R. Co., 72 Pa. Superior Ct. 353, Judge Head said, at page 357:

". . . By this we understand the learned counsel to mean that, because of the passage of the Act of 1913, *giving to the Water Supply Commission of the Commonwealth certain regulatory powers over the use of the streams of the Commonwealth* and making disobedience to its orders or a violation of its provisions a misdemeanor, it is no longer possible to successfully indict a person or corporation for the creation and maintenance of a common nuisance in such streams."

In Com. *v.* Pennsylvania R. R. Co., 78 Pa. Superior Ct. 389, Judge Trexler said, speaking of the Act of 1913, "The Act of 1913 is a regulatory act."

These quotations indicate that our appellate courts have not been inclined to place a narrow construction upon the powers granted by the Act of 1913 to the Water Supply Commission and now exercisable by that commission under its new name, "The Water and Power Resources Board."

In our judgment, there is no basis for the view that the Act of 1913 merely conferred upon your board the right to pass upon and disapprove, or approve conditionally or unconditionally, the structural and engineering features of a dam proposed to be constructed. As you point out in your letter of inquiry, there are a number of types of obstructions over which your board has jurisdiction under the act which do not involve engineering or structural questions. A fill or other form of stream encroachment is one of these. Here there is no question of safety, as far as the fill or encroachment is concerned; but the question is bound to arise whether the fill or encroachment will reduce the flood-carrying capacity of the channel or adversely affect the use of the stream for navigation or other proper purposes. Similarly, when your board is requested to pass upon the construction of a bridge across a stream, it is scarcely conceivable that the Legislature intended your board to determine whether, from an engineering standpoint, the plans for the bridge contem-

plated a structure safe for travel. The question which the Legislature undoubtedly intended you to consider was whether the location of the piers or other features of the bridge in the stream would be likely to cause ice jams or affect navigation, and whether the height of the bridge above the stream was sufficient not to interfere with the use of the stream for navigation, etc.

If, in considering an application for a fill or an encroachment or a bridge, your board is not confined to the study of engineering and structural features—and clearly it is not—there is no justification for holding that you are thus limited in determining whether to grant a permit for the construction of a dam in a stream. Accordingly, in our judgment, your board has authority, when considering an application for the construction of a dam, to determine whether the proposed structure will injuriously affect public or vested private rights in the stream, including the questions whether navigation, flood control and use of the stream for other legitimate purposes will be adversely affected.

From C. P. Addams, Harrisburg, Pa.