Opinion of Court below—Opinion of the Court. [256 Pa.

Powell's Trusts (supra), and regard an unlimited power to appoint by will as a general power, notwithstanding the donee has no right to dispose of the estate while living, and refer the remoteness in such case to the period when the power is exercised, and not to its creation, the opinions expressed by the justices of the Supreme Court of this State, manifest adherence to the principle of In re Powell's Trusts (supra), as approved in the original and succeeding editions of Gray on Perpetuities.

The motion for judgment in favor of plaintiff is refused.

Verdict for defendant by direction of the court and judgment thereon. Plaintiffs appealed.

*Errors assigned* were in directing verdict for defendant and in refusing plaintiffs' motion for judgment n. o. v.

*Thomas Raeburn White,* for appellants.

*Arthur G. Dickson,* for appellee.

PER CURIAM, February 19, 1917:

The judgment in this case is affirmed on the opinion of the court below, as written by its learned president judge, denying the plaintiffs' motion for judgment non obstante veredicto.

---

# Borough of Mount Union et al., Appellants, *v.* Mount Union Water Co.

*Public Service Commission—Appeals—Review by Superior Court —Act of July 26, 1913, P. L. 1374—Act of June 3, 1915, P. L. 779.*

1. Under the Public Service Commission Act of July 26, 1913, P. L. 1374, as amended by the Act of June 3, 1915, P. L. 779, the Superior Court is not required on appeal to fix and determine for itself the rate, charge, etc., that a public service company may exact. The inquiry on appeal is limited to the question as to

whether the order appealed from as shown by the record and certified by the commission, is reasonable and in conformity with law.

*Water companies—Rates—Boroughs—Public Service Commission.*

2. Where the ordinance of a borough grants to a water company a franchise to lay and maintain water pipe lines "for a period of ten years or until such time as said works may be purchased by said borough," the duration of the franchise is uncertain and indeterminate as to time. The acceptance by a company of such an ordinance will not estop it from advancing its rates within the period of ten years if it appear such advance does not amount to more than a reasonable rate: Turtle Creek Borough v. Penna. Water Co., 243 Pa. 415; Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114, followed.

3. An order of the public service commission refusing to disapprove of rates to consumers imposed by a water company, will not be reversed by the Supreme Court on appeal where it appears that a large amount of testimony was taken, much of it of an expert character, that the report of the commission showed a careful consideration of the question, and that the conclusions reached by the commission were supported by the preponderance of the evidence produced. In such a case where a complaint is made in the petition that the supply of water is inadequate, and that the water was not of the quality required by the ordinance, the commission in dismissing the complaint as to the rates may retain the petition pending the completion of tests directed to be made to determine the question of the adequacy of the water supply and pending a direction requiring the company to take the necessary steps to prevent further pollution of the water.

Argued Jan. 18, 1917.   Appeal, No. 262, Jan. T., 1916, by plaintiffs, from decree of Superior Court, No. 203, October Term, 1915, affirming decree of the Public Service Commission of the Commonwealth of Pennsylvania, No. 271 of Complaint Docket, in case of the Borough of Mount Union et al. v. The Mount Union Water Company. Before BROWN, C. J., MESTREZAT, STEWART and FRAZER, JJ.   Affirmed.

The facts appear in Mount Union Borough v. Mount Union Water Company, 63 Pa. Superior Ct. 337, and in the following opinion of HEAD, J.:

The Act of July 26, 1913, P. L. 1374, creating the Public Service Commission declares in Section 1, Article IV, that it is "an administrative body or commission for the purpose of regulating public service companies." The basic character of the newly created body, is thus clearly defined. To enable such a body to execute the avowed legislative intent in creating it, to wit, the regulation of public service companies in the State of Pennsylvania— it was necessarily invested with powers far reaching in extent and productive of possible results of vital importance not only to those immediately affected by them but as well to the whole body of the State. The general scope of these powers is well summarized in Section 1 of Article V of the act which again begins by declaring "The commission shall have general administrative power and authority, as provided in this act, to supervise and regulate all public service companies doing business within this Commonwealth." As many of the orders made even by such an administrative commission in the proper execution of its powers would necessarily have the effect of a judicial judgment or decree affecting the property rights of the citizen, any party aggrieved thereby was allowed an appeal to the Court of Common Pleas of Dauphin County. Without attempting to advert to the sections of the act relating to the procedure in that court or to the cases in which the appeal was to be taken to the court of the particular county in which the property taken, etc., was situate, we find the legislative intent in allowing appeals generally expressed in Section 22 of Article VI. It is brief, and we quote it:

"At the hearing of the appeal the said court shall, upon the record certified to it by the commission, determine whether or not the order appealed from is reasonable and in conformity with law."

By the Act of June 3, 1915, P. L. 779, the legislature saw fit to amend certain sections of the Act of 1913, so as, inter alia, to make the appeal allowed by the last named act to this court instead of the Court of Common

Pleas of Dauphin County. Section 22 of the Act of 1913, just quoted, was neither amended nor repealed. It still measures the scope and purpose of our revisory powers, so far as conferred by this act, as it did those of the Court of Dauphin County. There is nothing in the Act of 1915 to warrant the conclusion that the legislature intended to make the Superior Court a second administrative commission. The statute neither requires nor authorizes this court to fix and determine for itself the rate, charge, etc., that a public service company may exact. Our function is, as the statute declares, but to decide whether or not the appellant has discharged the burden cast on him by the legislature. Or in the words of the act "our inquiry, etc." Our inquiry therefore must be; was the order appealed from, as shown by the record certified to us by the commission, reasonable and in conformity with law.

The Mount Union Water Company is a public service company within the Commonwealth. It supplied water to private consumers in the Borough of Mount Union and to the borough itself for fire protection or other municipal purposes. It undertook to raise its schedule of rates to both classes of consumers. Thereupon the borough filed its petition with the public service commission setting forth its grounds of complaint against the proposed increase in rates and praying for an order directing the water company to furnish to its consumers a certificate of the payments made by each in excess of the rates existing prior to the proposed increase: and that after a final hearing the commission should "make such order in the premises as may seem reasonable." After an answer had been filed by the water company, public hearings were had and much testimony taken. Upon the conclusion of the hearings an order was made by the commission, and the Borough of Mount Union, feeling itself aggrieved thereby, took this appeal.

One of the chief contentions before the commission was that the ordinance of the borough, under which the

water company occupied its streets, would expire in ten years from its date, and that within that period the water company was obligated, by its acceptance of the ordinance, to maintain the schedule of rates therein specified. This question was carefully considered by the commission and was determined against the appellant under the authority of Turtle Creek Borough v. Penna. Water Co., 243 Pa. 415, and Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114. This conclusion was so clearly correct that upon the argument of the appeal in this court, the able counsel for the appellant formally abandoned the assignment of error complaining of the action of the commission in this respect. The provisions of the ordinance as to rates therefore presented no legal obstacle to the increase proposed.

It was next urged before the commission that if the proposed increase were to be continued it would result in rates to consumers that would be unreasonable and oppressive. The proper determination of this question necessarily involved the ascertainment of a number of facts, such as the value of the investment of the company, the length of time it had operated, the amount of gross revenue received from consumers, and the proper deductions to be made therefrom to ascertain the net revenue and its proportion to the value of the investment of the owners. Much testimony was taken—a good deal of it necessarily of an expert character—to enable the commission to determine whether or not the contention of the borough in this respect was made out. Again the report of the commission shows how carefully this question was considered and points out at least much of the testimony upon which its conclusion rested. That conclusion was that even under the proposed increase, the net revenues of the company would still fall short of the amount which the Supreme Court, in Brymer et al. v. Butler Water Co., 179 Pa. 231, held such company might charge and collect without being subject to the criticism that such rates were either unreasonable

or oppressive. It cannot be successfully argued here that the conclusions of fact reached by the commission were unsupported by evidence. On the contrary, a careful reading of the whole of the testimony, as presented by this record, would lead the opinion writer at least to affirm that the findings of the commission in this respect were supported by the preponderance of the evidence produced.

Two further questions are urged by the appellant as reasons why the water company should not at this time be permitted to make the proposed increase in rates. It is contended that the supply of water was inadequate in quantity and did not satisfy the obligations of the company under the ordinance; and further that it was not of the quality required by the same ordinance. There was testimony that at certain times mentioned tests were made and the pressure of water obtainable was far below that which the company had undertaken to furnish. There was also testimony that the lack of pressure at the times named was owing to causes over which the company had no control, such as the unusual and unexpected drouth of a particular season, and that the valves leading from the main reservoir had been tampered with by some stranger to the company without its knowledge or consent. Considering all of these matters, the commission concluded the borough had failed to maintain its contention that the water supply was insufficient in quantity.

But the commission went further by its order so that it might be satisfied, from the periodical tests it required to be made, that the borough would receive an adequate supply of water. The order shows that in this respect the commission held the petition so that upon the completion of the tests it directed to be made it could finally determine the question of the adequacy of the water supply. It was found under the evidence that proper care had not been taken by the water company in the protection of the water shed from which its reservoirs were

filled. In this respect, too, a forward order was made, under the power expressly given to the commission, which order required the company to take the necessary steps to prevent any further pollution. The order made by the commission distinctly provides what is to be done by the company as to the matters last mentioned and concludes as follows:

"3. That the complaint in this case be, and the same is hereby dismissed save. as to matters provided for in this order."

This action of the commission, fully authorized by the statute, as we have already said, was clearly for the benefit of the borough and its citizens, and we are unable to see how it can be made a subject of complaint or how we could rightfully interfere with it. If the tests provided for have not satisfied the commission that the company was complying with its obligation to furnish an adequate supply of water, or if the water company should neglect and refuse to carry out the provisions of the order relating to the protection of its water shed, the commission is amply authorized to make such further order as would fully protect both the borough and its citizen consumers.

After a careful review of the entire record, we are unable to say that the order made by the public service commission was either unreasonable or not in conformity with law. It should not therefore be interfered with.

Order affirmed. The costs of this appeal to be paid by the appellant.

The Borough of Mount Union et al. appealed.

*Error assigned* was the decree of the Superior Court.

*James S. Woods,* with him *Charles E. Hower,* for appellants.

*Samuel I. Spyker,* for appellee.

*Berne H. Evans,* for the Public Service Commission.

MT. UNION BORO. et al., Appel., *v.* MT. UNION W. CO. 523

1917.]                    Opinion of the Court.

PER CURIAM, February 19, 1917:

Nothing can be profitably added to the well considered opinion of the Superior Court, affirming the order of the Public Service Commission (63 Pa. Superior Ct. 337), and on that opinion the appeal is dismissed, at appellant's costs.

---

## Borell's Estate.

*Decedent's estates—Accountants—Surcharge.*

An executor will not be surcharged for loss on the sale of stock where the auditing judge finds that the accountant acted in the matter with common skill, prudence and caution, and properly exercised the discretion given it by the testator.

Argued Jan. 18, 1917. Appeal, No. 226, Jan. T., 1916, by Ralph C. Stewart, Trustee, from decree of O. C. Philadelphia Co., Oct. T., 1913, No. 277, dismissing exceptions to adjudication of third account in the Estate of Henry A. Borell, deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Exceptions to adjudication.

The pertinent facts appear in the adjudication of GUMMEY, J., which was in part as follows:

Henry A. Borell died April 13, 1913, leaving his last will and codicil thereto, duly probated.

Counsel for certain creditors requested the auditing judge to surcharge the accountant upon the several items hereinafter set forth:

(1) For failure to convert securities within one year from grant of letters.

At the time of his death the testator was the owner of 673 shares of the capital stock of the West End Trust Company of the par value of $50 per share; he had assigned 300 of these shares to the Independence Trust