# Perry County Telephone and Telegraph Company, Appellant, *v.* Public Service Commission.

*Corporations—Telegraph and telephone companies—Certificate of public convenience—Public Service Commission—Constitutional law.*

Where a telegraph and telephone company petitions for the grant of a certificate of public convenience for a particular district, and the result of the hearing before the Public Service Commission is that in large part the certificate issued, but as to two on three restricted localities it was refused, the action of the commission will be sustained where it appears that the order depended on many matters affecting the judgment of the Public Service Commission acting for the entire body of the public, and that the opinion filed by the commission disclosed an appropriate reason for the action of the commission.

In such a case the petitioner is not denied any constitutional right under Section 12, Article XVI, of the Constitution which provides that "any association or corporation organized for the

purpose or any individual shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines; and the general assembly shall by a general law of uniform operation provide reasonable regulations to give full effect to this section."

Argued Oct. 31, 1917. Appeal, No. 10, March T., 1918, by Perry County Telephone & Telegraph Company, from order of Public Service Commission, Application Docket No. 219, 1915, granting petition of public convenience in case of Perry County Telephone and Telegraph Company v. Public Service Commission. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Petition for approval of amendment of charter, and for certificate of public convenience.

From the record it appeared that the Perry County Telephone and Telegraph Company having secured an amendment of its charter permitting it to make thirteen extensions into the counties of Perry, Cumberland, Dauphin, Juniata and Franklin petitioned the commission for a certificate of public convenience for such extensions. The Cumberland Valley Telephone Company protested against two extensions, one beginning at the Borough of Bloomfield and the other at the Borough of Newport. No objection was made to remaining eleven extensions.

Rilling, Commissioner, filed an opinion which was in part as follows:

The Cumberland Valley Telephone Company is doing a general telephone business in eight counties in Pennsylvania and has, at the present time, more than eleven thousand telephones and operates about three hundred and sixty-three telephones in the eastern part of Perry County. It has made application and is now seeking to have a physical connection made between its lines and the lines of the Perry County Telephone and Telegraph

Company at Newport Borough in Perry County, which connection if it were made would permit an exchange of business between the said two companies so that so much of the territory in said Perry County as is exclusively served by either company might be reached by the patrons of the other company through such connection.

[The applicant denies the right of protestant to object to the extensions for the reason that it has no right to operate in the territory reached by them. We are of the opinion that protestant has the right to operate in said territory and has the right to protest against said two extensions.]   (1)

This application raises before this commission a question of much importance. Shall competition be permitted in territory that is being adequately served by a telephone company?......

The general policy of this commission is against the duplication of facilities of public utilities in the same district unless they are necessary for the accommodation, convenience or safety of the public therein. In carrying out this policy against duplication of such facilities many vexatious questions may rise but in each case the question should be determined from the facts as they exist in each particular locality.

The policy of telephone regulation by the commission will ultimately lead to great improvement. It makes it incumbent upon every company to so maintain its facilities and to furnish such service that intercommunication with other companies can be properly made and in this way the telephone service in the State will be brought to a high degree of efficiency. The commission can also in carrying out this policy provide the quality of service that may be required in any particular locality. In the municipalities a higher character of service is demanded than may be desired in rural districts.

The policy of regulating competition in telephone service has been adopted by other states......

In the case of Slate Belt Telephone and Telegraph Company v. Blue Mountain Telephone Company, 2 Pa. Cor. Rep. 403, this commission was dealing with a certain state of facts or conditions peculiar to that case and in the report made did not decide the question now before us. In that case the commission did however say:

"The future development of the telephone system will demand that every local community however small shall be given the opportunity to communicate by telephone with the State at large and the State at large with every local community, whenever circumstances will permit such coöperative service."

In this part of its report the commission has indicated the desirability of a universal system of telephone exchange communication. It is most unfortunate that the present existing competitive conditions in telephone service exist, or were ever permitted to be created in our State. In many of our communities the public is bearing the burden and suffering the inconvenience and annoyance of two telephone systems. A divided service is offered and many are obliged to pay a rental to each company; two pole lines obstruct and disfigure the streets and the duplication of the necessary wires is an added danger. All the accompanying annoyances of a dual system are inflicted upon the public together with the burden of the greater expense made necessary by the operation and maintenance of two systems.

[To permit the extension of the lines of one telephone company into the territory served by another, as is asked for in this case, can only result in inconvenience and annoyance to the patrons of both and in the end will affect the service of both companies. The time will come when one will give way as the patience and endurance of the public, long-suffering though it may be, will not permit itself to be imposed upon by a duplication of telephone systems.] (2)

In the matter of the public supply of water, electricity and other public utilities this commission, under the

powers and authority vested in it by the provisions of the Public Service Company Law, has from its beginning adopted and pursued a policy whereby unnecessary and useless competition should be prevented. This policy was adopted after careful consideration and is being carried out for the benefit and protection not only of the consumer but also of the Public Service Companies.

This policy is based upon sound reasoning and every reason that applies to or argues in its favor applies to telephone service.

There is nothing of more importance to our social and business relations than the matter of communication with one another. It was, however, the invention of the telephone that gave to us the efficient and instantaneous means of direct communication by the human voice for long distances. It is by means of the telephone that we have direct communication with every other person who is likewise a patron of the system, and just as the number of patrons is increased so does the value of the service grow.

[If the two extensions in this case that are objected to were permitted, it would result in a contest in the territory reached by them and some patrons would be connected with one system and some with another, with no means of communication between the two systems. We believe it would be a mistake to permit such conditions to be created. A connection between the two systems of the applicant and the protestant at a common point with proper regulations and rates for the intercommunication of business will be of much greater value to both companies than to permit the extensions to be made. If there is any complaint about rates or as to the character of the facilities or kind of service this may all be corrected. We are therefore of the opinion that the two extensions asked for by the Perry County Telephone and Telegraph Company, permitting it to extend its lines into the territory now adequately served by the Cumber-

534 PERRY CO. T. & T. CO., Appel., *v.* PUBLIC SER. COM.

Assignment of Errors—Opinion of the Court. [69 Pa. Superior Ct.

land Valley Telephone Company should not be permitted.] (3) An order will be issued accordingly.

*Errors assigned* were (1, 2, 3) portions of the findings as above, quoting them, and the order granting the certificate of public convenience, except as to two extensions to which objection had been made.

*W. H. Sponsler,* with him *James W. Shull,* for appellant.—It is the contention of the appellant that under the provisions of the Constitution of the State, the appellee has no power to dedicate any particular part or territory of the Commonwealth to the use, patronage or benefit of any particular railroad or telegraph company, restricting other like companies from it, and that any such action is in violation of the provisions of that instrument: Catawissa R. R. Co. v. Philadelphia & Reading R. R. Co., 168 Pa. 544.

*Berne H. Evans,* for Public Service Commission, cited: Penna. Power Co. v. Public Service Commission, 66 Pa. Superior Ct. 448.

OPINION BY HEAD, J., July 10, 1918:

The appellant, an incorporated and operating telephone company, desired to extend its then existing lines in several different directions. Having taken the necessary preliminary steps to secure an amendment of its charter, it applied to the Public Service Commission for a certificate of public convenience, the granting of which was made by the public service law a condition precedent to the issue of the amendment desired. Another telephone company, operating in a portion of the territory to be included in the proposed amendment, protested on the ground that the public in that particular section was already being sufficiently served by existing lines and that the public convenience would be rather retarded than promoted by the entry therein of a competitive cor-

poration with no new field of service apparent. Public hearings were had, testimony was taken, and the case was argued before the commission. The result was that in large part the certificate issued, but as to two or three restricted localities it was refused. The petitioner company appeals to this court.

It cannot be denied that if the public service law is to be regarded as operative and controlling, the question was manifestly and entirely within the jurisdiction of the commission. What instrumentalities in the way of public utilities will promote the public safety, convenience and comfort in a given community is surely not a question of law. The opinion filed by Mr. Commissioner Rilling discloses, as we believe, an appropriate reason for the action of the commission. There is nothing within our vision, as we examine the record, that would permit us to declare it to be an illegal reason unless we go to the extent urged upon us by the able counsel for the appellant, to wit, that the refusal of the certificate sought amounted to a denial of some constitutional right of the appellant company.

It is true that Section XII, Article XVI, of our organic law provides, "Any association or corporation organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines; and the general assembly shall, by general law of uniform operation, provide reasonable regulations to give full effect to this section." We assume from the very terms of the language quoted it could hardly be urged this section of the Constitution was self-executing. The mere adoption of that instrument did not vest in every individual in the State, or in every association of individuals, actuated by a common desire, the right to occupy the roads and highways of the Commonwealth without regulation or restriction. "The general assembly shall, by general law of uniform operation, provide reasonable regulations to give full effect to this section." The legislature, follow-

ing both the letter and the spirit of the language we have quoted, has provided regulations which it asserts are reasonable for the purpose of giving due effect to the constitutional provision.  If the regulation here complained of be a reasonable one, it is not easy to perceive how it can be said that any constitutional right of the appellant has been impaired or destroyed.  We are not convinced this court should declare it to be unreasonable, and this for the sufficient reason that the question involved, as we have already stated it, depends on many matters that could and should affect the judgment of the Public Service Commission, acting, as it does, for the entire body of the public.  If its order or decree infringes upon no right secured, by the constitution and laws of the State, to the appellant, it should not be interfered with.  We are of opinion it can produce no such result.

The order and decree of the Public Service Commission appealed from is affirmed and the appeal dismissed at the costs of the appellant.