# Foltz, Appellant, *v.* Public Service Commission.

*Constitutional law—Public service corporations—Street railways —Contracts with municipalities—Rates.*

The enactment of the Public Service Company Law (Act of July 26, 1913, P. L. 1374), is a proper exercise of the police power of the Commonwealth delegating to the Public Service Commission

absolute and exclusive authority to declare the policy of the State, in matters of public concern relating to public service companies, and this power includes the right to declare that any element of a contract, especially a continuing obligation, such as the agreement not to charge more than a given rate of fare, entered into in consideration of the consent of the municipality to the use of its streets by a street railway company, can be declared void, either temporarily or for all time, if, in the opinion of the commission, it would operate to the detriment of the public in interfering with the efficiency of the service of such public service company, or if it amounts to a confiscatory rate. This power to declare what is public policy, under any given state of facts, is an exclusive delegation to the Public Service Commission.

*Constitutional law—Constitution of Pennsylvania—Police power —Constitution of the United States—Impairment of contracts.*

Section 9 of Article XVII of the Constitution of Pennsylvania which provides that "No street passenger railway shall be constructed within the limits of any city, borough or township without the consent of the local authorities" construed in connection with Section 3 of Article XVI of the same Constitution providing that "The exercise of the police power of the State shall never be abridged," etc., does not deprive the State of authority to regulate the rates of public service corporations for the general welfare of its inhabitants. This delegation of the police power is proper, in so far as the right to declare conditions in such contracts relating to rates contrary to public policy, when entered into in pursuance of common law or statutory authority. The exercise of this delegated authority is not an impairment of a contract, within the Federal Constitution.

As between Section 3 of Article XVI and Section 9 of Article XVII of the Constitution of Pennsylvania, the paramount clause is the prior one, and the legislature has the constitutional right to empower the Public Service Commission to modify contracts made in pursuance of Section 9 of Article XVII.

Argued March 12, 1919. Appeal, No. 23, March T., 1919, by Charles S. Foltz, Complainant, from order of the Public Service Commission of Pennsylvania, Complaint Docket No. 2284, in the case of Charles S. Foltz v. Public Service Commission, on appeal, and Conestoga Traction Company. Before ORLADY, P. J., PORTER, TREXLER and WILLIAMS, JJ. Affirmed.

26    FOLTZ, Appel., *v.* PUBLIC SERVICE COM.

Statement of Facts—Opinion of the Court. [73 Pa. Superior Ct.
From the record it appeared that the Conestoga Traction Company, as a public service company engaged in the transportation of persons and property, filed a schedule of rates with the Public Service Commission providing for an increase of fares. The complainant within thirty days entered a complaint with the Public Service Commission averring that agreeably to Article XVII, Section 9, of the Constitution, the City of Lancaster had prescribed by certain franchise ordinances the maximum fare to be charged by street railway companies within its limits and that the Conestoga Traction Company, operating under the franchise conferred by said ordinances, now proposed to violate the terms thereof by an increase of fares, on file with the commission, and praying the commission to make an order refusing its sanction to the proposed increase.

The Public Service Commission, without going into a valuation of the respondent's property, filed an opinion and order sustaining the increased rates and dismissing the complaint. Plaintiff appealed.

*Error assigned* was the order of the commission.

*E. Spencer Miller,* for appellant.

*S. R. Zimmerman* and *John E. Malone,* for Conestoga Traction Company, intervening appellee.

*Berne H. Evans,* Counsel for the Public Service Commission.

OPINION BY WILLIAMS, J., July 17, 1919:

Appellant filed a complaint with the Public Service Commission, alleging that the Conestoga Traction Company proposed to raise its rate of fare from five cents to six cents in the City of Lancaster; that this would be unjust, excessive, unnecessary and illegal, and in violation of the franchise of the said railway company, and of the

city ordinance, approved March 3, 1887, and other franchise ordinances to the same traction company, providing that the rate of fare in Lancaster should not be more than five cents.

The commission found that the whole system comprises 164 miles of single track, of which approximately twenty miles are in Lancaster, and the remainder extending in all directions from the city as interurban lines; the increase in operating costs comprises an item of $262,000, for labor, $14,775.42, actually paid for materials, and estimated to August 1, 1919, $22,163.13; taxes $25,000, a total prospective increase in operation costs of $309,-163.13; during the same period, the prospective increase in gross income was $140,631.82; during the year ending, July 31, 1918, the gross income of the company was $1,295,486.54, which, with the estimated increase of income for 1918-1919, would amount to $1,436,118.36; the total expenses for the year ending, July 31, 1918, were $843,428.99, which, added to the estimated increase, amounts to $1,152,592.12, giving an estimated net revenue of $283,526.24; out of this sum it is obliged to pay as rental or dividends, on its leased lines, the sum of $189,257.

No valuation of respondent's property was shown; the amount of its capital stock, $4,199,950, and bonds, $1,-887,500, a total of $6,087,450, and its trackage, were practically the only evidence, of value. The commission made no attempt to value the physical property, saying: "The making of a detailed valuation would impose a burden upon respondent that is not required to meet the exigencies of this case. It is a matter of almost common knowledge that a street railway system, such as respondent's, may have a value per mile of track of any sum from $20,000 upwards. If we use the figures of $30,000 per mile, respondent's system would have the value of approximately $5,000,000. We do not say this is the value. It may be more or less. What we intend to say is that if we use the evidence we have, with our knowledge

of street railways values, we can reach a conclusion as to whether or not the sum of $283,526.24, will be sufficient for depreciation and a fair return upon the property."

The commission found the increased rate was not unreasonable and dismissed the complaint, with leave to make further complaint when the facts justify it, settling the question of the right to abrogate the contract between the company and the city by referring to the commission's report in Wilkinsburg v. Pbg. Rys. Co., P. U. R., F 1918, p. 131, where it had held that rate regulation by franchise does not preclude the commission from changing such franchise rate in the exercise of the police power of the State.

We are confronted, in this appeal, with two problems: (1) the relative powers of the commission and this court as to original finding, conclusion and review, and (2) whether the Act of 1913 can constitutionally authorize the commission to abrogate a contract between a municipality and a public service company by permitting the latter to raise its rates in violation of an ordinance, the terms of which it had accepted as part of the consideration for the consent of the municipality to the use of its streets, which consent was necessary under Article XVII, Section 9, of the Constitution of Pennsylvania. The solution of these problems necessitates a thorough review of the legislation and decisions in the appellate courts relating to the public service commission.

(1) In Borough of Mt. Union v. Mt. Union Water Co., 256 Pa. 516, the Supreme Court affirmed the order of the Superior Court, reported in 63 Pa. Superior Ct. 337, on the opinion of HEAD, J., who says (341) : "Section 22, of the Act of 1913......measures the scope and purpose of our revisory powers......The statute neither requires nor authorizes this court to fix and determine for itself the rate, charge, etc., that a public service company may exact. Our function is, as the statute declares, but to decide whether or not the appellant has discharged the bur-

den cast upon him by the legislature.  Or in the words of the act our inquiry, therefore, must be, was the order appealed from, as shown by the record certified to us by the commission, 'reasonable and in conformity with the law.'"  West, etc., Co. v. P. S. C., 65 Pa. Superior Ct. 5, and Pa. Power Co. v. P. S. C., 66 Pa. Superior Ct. 448, assert the same principle.

In Ben Avon v. Ohio Valley Water Co., 260 Pa. 289, the Supreme Court definitely outlines the jurisdiction of the appellate courts upon appeal from the order of the commission.  The orders of the commission are final unless (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based on a mistake of law; and, where questions of fact are involved, an order, regular on its face may be set aside if it appears that (4) the rate is so low as to be confiscatory and in violation of the constitutional prohibition against taking property without due process of law; or (5) if the commission acted so arbitrarily and unjustly as to fix rates contrary to the evidence or without evidence to support the rate; or (6) if the authority therein involved has been exercised in such an unreasonable manner as to cause it to be within the elementary rule that the substance and not the shadow determines the validity of the exercise of the power.  The wisdom and expediency of the order is not involved, and the function of the appellate court is to decide whether or not appellant has discharged the burden cast upon him by the legislature. It follows that the inquiry of the appellate court is not whether the order is such as it would have made in the exercise of the discretion conferred upon the commission. Nor can the appellate court substitute its own judgment as to rates and values for that of the commission.

The Act of 1913 expressly gives to the commission the right to value the property of a public service company for the purpose of fixing proper rates, and to fix rates which shall be reasonable; it has general administrative power and authority to supervise and regulate all public

service companies: Article V, Section 1; it has power to declare and determine what rates shall be collectible whenever it shall appear that a rate is unjust, unreasonable or inadequate: Article V, Section 3; it shall prescribe how rates shall be established by companies, filed with the commission, and the rates so filed shall be the legal rates: Article II, Section 3(e).

It does not appear, in the case at bar, that the valuation placed upon the company's assets for ratemaking purposes is unreasonable, and while we do not agree that it is proper to base valuation upon vague estimates, without the submission of evidence on the subject, yet we are not convinced that the valuation, based on knowledge of the cost and other facts in evidence, was unreasonable.

The appellant contends the rate should be five cents in Lancaster, and six cents outside of the city, because the evidence discloses no division of costs, expenses, deterioration, etc., upon which the commission could determine whether the five-cent fare was insufficient in the City of Lancaster. If the commission had adopted this attitude, it would have placed itself in the position of discriminating against the rural districts, violating the direction of the act, that no discriminatory rates as to locality shall be permitted: Article III, Section 7, of the Act of 1913. To sustain such action on the part of the commission there should clearly appear facts to justify the discrimination.

The appellant further contends that the commission had no right to depend upon prospective expenditures as a basis for fixing a reasonable rate. The business of public utility companies has developed to an extent which justifies this action on the part of the commission. Rate valuation is an uncertain proposition, at the best, and must necessarily be subject to elastic rules and regulations. We see no harm in the course pursued by the commission in this respect.

(2) The construction of the Public Service Company Act in relation to the powers of the commission began

with Turtle Creek Boro. v. Penna. Water Co., 243 Pa. 415. Formerly the courts were the rate-making power in this State. ELKIN, J., said (418) : "We have uniformly upheld contracts of this kind (fixing rates) for definite periods; this was prior to (approval of the Public Service Company Act) since which time we have not been called upon to consider the question." Again, in Bellevue Water Co. v. Ohio Valley Water Co., 245 Pa. 114, the same judge said (116) : "If the case in any of its aspects involves the reasonableness or unreasonableness of water rates, it is a sufficient answer to say that the section of the Act of April 29, 1874, P. L. 73, which gives courts the power to determine questions of this character was repealed by the public service company law......In other words the legislature took this power away from the courts and conferred it upon the Public Service Commission. Hereafter, so long as the Act of 1913, remains in force, the question of the reasonableness of rates established by public service corporations, must in the first instance be submitted to the Public Service Commission when challenged. This is now the declared statutory policy of the law......The contract as to water rates is unlimited in time, being coextensive with the grant. Is such a contract binding in the face of the declared statutory policy of the law that the public service commission shall have power to inquire into and determine the reasonableness of rates in all such cases? This question was answered adversely to the contention of appellants in Turtle Creek Boro. v. Penna. Water Co., 243 Pa. 415. ......We did decide in that case that a contract of this kind, unlimited by its terms and hence, indeterminate as to time, could not be enforced indefinitely, and must give way to the general policy of the law under which the legislature created a special tribunal to pass upon and determine questions relating to the reasonableness of rates charged by public service corporations......The disposition everywhere is to commit questions relating to the regulation, and to rates of public service corpora-

tions, to the supervisory powers of special tribunals, and concededly matters of this character are within the domain of legislative action." In this connection see also, V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523, and Rochester, etc., Assn. v. Beaver Valley Water Co., 68 Pa. Superior Ct. 122.

In St. Clair Borough v. Tamaqua, etc., Co., 259 Pa. 462, it was held that a court of equity had no jurisdiction to interfere in a dispute over the reasonableness of rates charged by an electric railway company until after the commission had considered the matters and passed judgment thereon, when an appeal in accordance with the Act of 1913 may be taken to the proper court and decision made in accordance with the terms of the act; it was further stated that where a contract, fixing the rate, unlimited in time, has been entered into by a public service company, with a borough, prior to the Act of 1913, the State has the right, under the police power, through the commission, to inquire into and adjust the rate to a reasonable basis, in spite of the contract. The holding in Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526, is to the same effect, in a case where the contract rights of an individual were modified by the commission in favor of a public service company. Leiper v. Baltimore, etc., Co., 262 Pa. 328, is another case of this kind, where an individual attempted to enforce contract rights in equity, under an agreement with a railroad as to rates. Fox, J., says (332) : "The basis upon which this conclusion must rest is that under the Constitution of Pennsylvania, Article XVI, Section 3, it is provided: 'The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the State.' Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the 'general well being of the State,' the rights of individuals must give way to the general wel-

fare. It therefore follows that when, as in this case, the parties enter into a contract with a public service corporation relating to rates, they are presumed to have done so with the knowledge that the right of the State to exercise this police power in the future is expressly reserved, and that where the common weal and the interests of the public demand that the provisions of the contract thus entered into shall be modified, it can be done without any violatión of the provisions of the Constitution of the United States with reference to the impairment of the obligation of contracts......(335) This court has held that contracts fixing rates which are for an indeterminate period will not be sustained. This perhaps carries with it the implication that a contract for a determinate or definite time might be sustained, although this has not been definitely decided. We have reached the conclusion that this is a distinction which ought not to be maintained. Where parties enter into a contract which relates to a matter which may subsequently be the subject of revision by the State in the exercise of its police power, their contracts, whether definite or indefinite in point of time, must be held subject to the right of the State to act in regard thereto. They cannot allege that the contracts, so far as the State is concerned, are inviolable. It is not, as we have already pointed out, in the interest of the parties to the contract, or either of them, that the contract may be revised or modified, but because of the greater good resulting to the public at large......There seems to be no difference in principle between the case of a contract indeterminate and one that is determinate, nor is there any difference in principle between a contract with a borough, with a corporation, or with an individual. Any contract of this character, whether for a definite or indefinite period, must give way when its terms conflict with the rates fixed in the method prescribed by the Public Service Act of 1913." In this connection, see also, Relief, etc., Company's Petition, 63 Pa. Superior Ct. 1.

In Pottsville, etc., Co. v. P. S. C., 67 Pa. Superior Ct. 301, Trexler, J., said (304) : "The primary object of the public service laws is not to establish a monopoly or to guarantee the security of investment in public service corporations but first and at all times in the just exercise of its powers to serve the interest of the public. Unrestricted competition is ordinarily to be avoided not because......it injures the corporation against which it is directed but that ultimately the usual experience of man tells us that the losses ensuing are visited upon the public."

In analyzing the cases construing the Act of 1913, two principles stand out prominently: (1) we do not weigh the testimony, but only examine it to see if there is any evidence to sustain the findings; if the evidence is properly taken and competent; and whether the proper legal principles, especially as to jurisdiction, statutory and common law, and substantive rights, constitutional, statutory and common law, have been regarded and applied, all of which are elements to be considered in arriving at a conclusion as to whether the order appealed from is reasonable and in conformity with the law; and (2) that the Act of 1913 is a proper exercise of the police power delegating to the commission absolute and exclusive authority to declare the policy of the State in matters of public concern, relating to public service companies, and that this power includes the right to declare that any element of the consideration, especially a continuing obligation such as an agreement not to charge more than a given rate of fare, entered into in consideration of the consent of a municipality to the use of its streets by a street railway company can be declared void, either temporarily, or for all time, if, in the opinion of the commission, it would operate to the detriment of the public in interfering with the efficiency of the service of such public service company or amounts to a confiscatory rate. This power to declare what is public policy under any given state of facts is an exclusive delegation to the com-

mission.  It cannot be seriously questioned, and appellant presents no compelling authorities to the contrary, that this delegation of the police power is proper, in so far as the right to declare conditions in such contracts relating to rates, contrary to public policy when entered into in pursuance of common law or statutory authority, and the exercise of this delegated authority is not an impairment of a contract within the Federal Constitution.

The appellant, however, contends that the fact that the contract not to raise the rates in this case was entered into pursuant to constitutional authority under Article XVII, Section 9, of the Constitution which provides that "no street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities," and that this makes the municipality the arbiter of public policy under the police power of the State in so far as relates to street railway companies, and so the commission has no jurisdiction in the premises.  Article XVI, Section 3, of the same Constitution, provides, however, that "the exercise of the police power of the State shall never be abridged, or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general welfare of the State."  It will be noted that this delegation to municipalities of the right to withhold their consent appears in a subsequent article and section to the one in which the police power of the State is expressly reserved, and that in Article XVI, Section 3, the word "corporation" stands unaffected by any modifying words, and must be construed to mean municipal as well as private corporations.  The word is descriptive of a class in which municipalities are an important element, and by no legal ingenuity can it be restricted in its operation to private corporations as distinguished from municipal corporations.  The right to withhold the consent in the future remains, and was recognized by our Court in Allied, etc., Assns. v. P. S. C., 70 Pa. Superior Ct. 13; it is, however, for the protection of the public,

and the fact that the local authorities have in the past been permitted to establish conditions which seemed to them to be for the public interest in this particular matter, was and is subject to the right of the legislature to declare other and conflicting rules of public policy.

In Perry, etc., Co. v. P. S. C., 69 Pa. Superior Ct. 529, recently affirmed by the Supreme Court, we held that though the Constitution, Article XVI, Section 12, provides: "Any association or corporation organized for the purpose, or any individual, shall have the right to construct and maintain lines of telegraph within this State, and to connect the same with other lines; and the general assembly shall, by general law of uniform operation, provide, reasonable regulations to give full effect to this section," it is not a deprivation of the constitutional right guaranteed by this section for the commission to refuse a certificate of convenience to a company which sought to enter into territory already adequately served by such lines. HEAD, J., says (535): "The mere adoption of that instrument did not vest in every individual in the State, or in every association of individuals, actuated by a common desire, the right to occupy the roads and highways of the Commonwealth without regulation and restriction."

It is a well recognized tenet of construction that in any written instrument, a will excepted, the first clause in point of position, if it is not too ambiguous to be properly applied, controls a subsequent clause. In the present case the section forbidding the abridgment of the police power and any construction thereof to the detriment of the public, is absolutely clear; and to permit municipalities to impose any condition they please upon street railways under Article XVII, Section 9, of the Constitution, would be to abrogate the prior clause. This will not be permitted. The paramount clause is the prior one, and the legislature had the constitutional right to empower the commission to modify contracts made in pursuance

24, (1919).]            Opinion of the Court.

of Article XVII, Section 9, of the Constitution of Pennsylvania.

The order of the commission is affirmed and the appeal dismissed at the costs of appellant.

PORTER, J., dissents.

KELLER, J., took no part in this decision.