## Borough of Clarks Summit, Appellant, *v.* Public Service Commission.

*Public Service Company Law—Order of Commission—Extension of territory—Financing.*

In an application for a certificate of public convenience, approving the extension of the facilities of a water company, a protest was filed by interested parties claiming that the extension would be unprofitable and result in increased rates. After negotiations, the applicant company filed a stipulation that any loss of profits would be taken care of from the proceeds of the company, and would not result in increased rates. The certificate of public convenience was issued by the Public Service Commission.

*Held:* That if the order was granted because of the stipulation, it was based on incompetent evidence and the record should be remanded to the Public Service Commission to decide the controversy in the light of proper testimony.

If a reasonable rate on all of the property used and useful could not be obtained under the existing schedule of rates, it might become a duty of the Public Service Commission to allow a general increase in the rates based upon a fair return of all property used in the public service. In such a contingency, the result would be that the stipulation must yield to the right of the Commonwealth to regulate the rates under its police power.

Argued November 22, 1927. Appeal No. 336, October T., 1927, by the Borough of Clarks Summit, from order of the Public Service Commission of the Commonwealth of Pennsylvania, in re: Application of Clarks Summit Water Company for approval of additional rights, etc., Complaint Docket No. A-16051—1927. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Application to the Public Service Commission for a certificate of public convenience permitting the extension of a water company.

592 · BOR. OF CLARKS SUMMIT, Appel., *v.* P. S. C.

Statement of Facts—Opinion of the Court. [92 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

· The Commission granted the certificate to the Borough of Clarks Summit and Waverly Water Company appealed.

*Error assigned* was the order of the Commission

*H. W. Mumford,* for appellant.

*John Fox Weiss,* Counsel for the Public Service Commission, and with him *Wendell Y. Blanning,* Assistant Counsel, and *E. Everett Mather, Jr.,* Legal Assistant, for appellee.

OPINION BY GAWTHROP, J., March 2, 1928:

The Clarks Summit Water Company applied to the Public Service Commission for permission to extend its service out from the Boroughs of Clarks Summit and Clarks Green, where it now supplies water to approximately seven hundred forty customers, for a distance of approximately two miles into the village of Waverly. To this application the Boroughs of Clarks Summit and Clarks Green and the Waverly Water Company filed protests. The Waverly Water Company holds a certificate of the Commission authorizing it to supply water in a portion of the village of Waverly. After filing its protest against the application of the Clarks Summit Water Company for an extension, the Waverly Company applied to the Commission for permission to supply water in the remaining portion of the village of Waverly. As to the portion of the village of Waverly not now covered by the certificate of the Waverly Water Company the two applications overlap, but the application of the Clarks Summit Water Company also includes the section lying between its own territory and the village of Waverly, which is not included in the application of the Waverly Company. The principal ground on which the Boroughs of Clarks Summit and Clarks

Green protested the application of the Clarks Summit
Water Company was that the extension would, in all
probability, be unprofitable to the company and create
a deficit, which would result in increased rates to the
consumers within said boroughs.   After hearings were
held, and arguments were made by counsel for the
respective parties on July 11, 1927, the Clarks Summit
Water Company filed on August 15, 1927, a stipu-
lation, signed by its president providing that: "The
applicant agrees for itself, its successors and as-
signees, that if the present application is approved by
the Public Service Commission, it will not in any pro-
ceeding involving rates charged in those two boroughs
base its claims for rates upon the investment made or
expenses required by construction or operation of
facilities for service to the territory covered by the
present application.   If the return upon the invest-
ment made in the territory here involved should be
less than a reasonable return the applicant agrees
that such loss will be met from its net profit and will
not be used as a basis for charging in the boroughs of
Clarks Summit and Clarks Green rates higher than
would otherwise be necessary, it being the intent and
purpose of this representation that all capital expen-
ditures made for service in this territory should be
excluded from the rate base and all operating expenses
excluded from the operating expenses upon which
rates in the two boroughs are based."   On the day of
the filing of this stipulation the Commission filed a re-
port and order, setting forth that after hearing and
full investigation, "and it appearing that the Clarks
Summit Water Company has by stipulation and
agreement of record agreed that all capital expendi-
tures made and required by the construction or oper-
ation of the facilities for service in the territory
covered by this application should be excluded from
the rate base and operating expenses upon which any
future proceeding before the Commission, involving

rates for service in the Boroughs of Clarks Summit and Clarks Green are submitted for determination; the Commission finds and determines that the approval of the application and the issuance of a certificate of public convenience in evidence thereof, is necessary and proper for the service, accommodation and safety of the public." The order was that a certificate of public convenience be issued evidencing the Commission's approval of the "additional right, power and privilege, as above determined." From this order the Borough of Clarks Summit and the Waverly Water Company have taken separate appeals. As the appeals were argued together and raise the same questions, they will be considered in one opinion.

It appears by the record that a few families living along the route of the improved state highway running from Clarks Green to Waverly desire to be served by the Clarks Summit Water Company. Some of them appeared before the Commission and testified that they had examined the facilities of the Waverly Company and did not consider them of such dependability that they cared to rely upon them for water supply. There was evidence that the district between Waverly and the Borough of Clarks Green is not fully developed at present, but that it is expected to develop so that the demand for water will increase. The cost of laying the main from Clarks Green to Waverly village, exclusive of extensions into the side streets and exclusive of connections with the consumer, or for fire hydrants, as estimated by Mr. Young, the Secretary and Treasurer of the Clarks Summit Water Company, will be at least $21,500. To this the witness added certain other items increasing the total original cost value of present contemplated extensions to at least $22,700. It is conceded that in order to give adequate service to Waverly village about $7,500 in addition will have to be spent upon a stand pipe or reservoir at Clarks Summit. There was no estimate as to

what part of the cost of the stand pipe should be allocated to the Waverly extension. Witnesses for the protestants estimated the cost of laying the main above described at between $30,000 and $40,000. Mr. Young estimated the total number of new consumers which his company would have at the beginning would be thirty houses and one school house. The company proposes to charge such consumers the rate that it now charges consumers in the two boroughs. The flat rate for the ordinary house in the two boroughs is $28.60 per year. Based on this rate the receipts from the houses would be $858 per year. Mr. Young thought that he could bring the gross receipts from new customers up to $1,500. Counsel for the Commission admit that even this return would be manifestly inadequate to provide for operating expenses and a reasonable return upon the proposed new investment. In October, 1926, the Commission filed a report involving the rates of the Clarks Summit Water Company to its consumers in the two boroughs. The fair value of the company's plant as of January 1, 1925, was fixed at $100,000 and a schedule of rates was allowed which would yield a gross annual revenue of $18,000, that is, eighteen per cent. upon its valuation. Upon an increased value of $22,700, the company should receive on the basis of a return of eighteen per cent. $4,086, and upon a basis of ten per cent. $2,270. When Mr. Young was asked to state from what source the company expected to recoup itself for the deficiency in revenue resulting from the proposed extension, he answered that it would have to be made up out of the profits of the company. There was no evidence, however, that the company had any net profits. It was conceded by the company, and is conceded by counsel for the Commission, that at the time of the hearing the quality of the company's service in the two boroughs was such that considerable improvements and extensions to its plant were neces-

sary or desirable. The reason assigned by the company for desiring to make the proposed extension of its lines was that it was necessary for it to issue bonds and stock to finance necessary general extensions and improvements to its service in the two boroughs, and that it could sell these obligations to prospective patrons living along the route of the proposed extension, if the certificate is granted. It is stated in the brief filed in behalf of the Commission that the situation before it was that "the company could not make necessary improvements in its service in its present territory unless it made this unprofitable extension and was apparently willing to bear this loss itself instead of recouping it from its present patrons," and that "in this situation the Commission decided that the wishes of the proposed consumers should be respected, but that, in order to protect the patrons of the two boroughs, a more definite statement should be made by the company respecting the method dealing with the probable loss. The president of the company then filed with the Commission a statement on behalf of the company, agreeing that it would bear any loss from this extension out of its net profit, and that in any subsequent rate case involving its charges in the two boroughs, the capital expenditure made for services in this territory should be excluded from the rate base," etc., and that "thereupon the Commission issued a certificate of public convenience evidencing its approval of the application." While the Commission has found that the granting of the application was necessary and proper for the service, accommodation, convenience and safety of the public and we cannot say that there is no competent evidence to support this finding, the conclusion is irresistible that the order was based in part at least upon the provision in the stipulation that the capital expenditures made for service in the territory covered by the Waverly extension should be excluded from the rate base

upon which rates in the two boroughs shall be based in the future. In our view the stipulation filed was incompetent evidence which materially affected the determination of the Commission and an order which rests upon any such ground is not in conformity with law. However commendable the policy of the Commission of keeping the rates in the two boroughs commensurate with the cost of rendering the service therein, such a policy must yield whenever it cannot be maintained without depriving the utility of its right to charge a rate which will produce a revenue which will yield a reasonable return upon all its property used in the public service. If a reasonable return on all its property so used cannot be obtained by a schedule of rates which varies according to the cost of service in different districts, it may become the duty of the Commission to allow a general increase in rates based upon a fair return on all the property used in the public service. In such a contingency the result in this case would be that the stipulation must yield to the right of the Commonwealth to regulate rates under its police power: Foltz v. Public Service Commission, 73 Pa. Superior Ct. 24. Although it is manifest that the Commission was satisfied that the proposed extension would be operated at a considerable loss to the company in the beginning, and it is doubtful whether the certificate of public convenience would have been granted if the company had not filed the stipulation, we cannot be sure that it would have been refused. In the circumstances we do not pass at this time upon the reasonableness of the order based on the competent evidence in the record, but reverse the order and remand the record to the Commission with directions to reconsider the matter and make such order as shall be reasonable and in conformity with law.