# Borough of Lansdowne et al., Appellants, *v.* The Public Service Commission.

*Public service companies—Water companies—Boroughs—First-class townships—Fire protection rates—Reasonableness.*

1. Under the procedure before the Public Service Commission it is not necessary that boroughs, affected by an increase of rates of water companies doing business therein, should have special notice of complaints made to the increased rate. The rights of all parties are fully protected by the provisions of article VI, section 14, of the Public Service Company Law authorizing a rehearing, or by permitting parties interested to file complaints as to the new rates ordered by the commission, and to present their case as to the alleged unfairness, injustice and unreasonableness of the schedule complained of.

2. The amount to be paid by a municipality for fire protection should be based on the cost of the plant devoted to public fire protection, in connection with its fair share of the cost of maintenance, operation and depreciation. Where the same pumps, reservoirs and mains are used for both domestic consumption and fire protection, the problem confronting the commission is to apportion the cost of the plant between the two services, for in order to afford adequate fire protection, the pumps, reservoirs, mains, etc., are necessarily larger than would be required for domestic use alone.

Just how the apportionment should be made is· a scientific not a legal question.

3. The determination by the Public Service Commission that approximately 75 per cent of the total investment in a water company's plant was properly apportionable to domestic and industrial service, and approximately 25 per cent to fire service; and that 9.6 per cent of the company's operating expenses were applicable to fire protection, and apportioning $180,130, or practically 20 per cent of the company's gross revenues, to be derived from fire protection service, is reasonable and in conformity with law, and will not be disturbed on appeal.

4. The order of the Public Service Commission, fixing the rates to be charged the various boroughs and first-class townships to which its lines extend, for fire protection service, will be affirmed, where it appears that the commission determined the approximate amount of the company's invested capital which should be apportioned to such fire service, and determined the proportional amount of revenue which should be obtained for such service and fixed rates to raise this amount of revenue, which provided for· a nominal charge of $7 for each fire hydrant and for a charge of $355 a mile for each mile of water main furnishing fire protection service within the borough or township.

5. The determination of such rates is within the power of the Public Service Commission, even though they will supersede rates fixed by contracts between the company and the respective boroughs and townships made before the Public Service Company Law went into effect.

6. The Public Service Company Law does not violate article III, section 20, of the Constitution of Pennsylvania forbidding the general assembly to delegate to any special commission any power to make, supervise or interfere with any municipal improvement, money, property or effects, or to levy taxes or perform any municipal function whatever. The Public Service Commission is not a special commission within the meaning of this section of the Constitution, and it has not the power or authority to usurp, and is not usurping, in the determination of rates to be charged by a public utility, any municipal power or function.

7. The determination by the commission of the fair, just and reasonable amount which a borough must pay for fire protection service, is not a levying of a tax against the borough, nor is it material, in the fixing of such rates, that the borough or township has not provided for the payment of the requisite sums during the current year.

Argued October 27, 1919.  Appeals, Nos. 30, 31, 32, 33, and 34, October Term, 1919, by complainants, from the order of the Public Service Commission in the cases of Borough of Lansdowne et al. v. The Public Service Commission of Pennsylvania and The Springfield Consolidated Water Company.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

Complaints against The Springfield Consolidated Water Company on account of schedule of increased rates for fire protection service.

From the record it appeared that the respondent company had filed an increased schedule of rates, to which complaints were made and, after hearing, the commission fixed the fair value of the company's property for rate making purposes at $7,203,320, ordered general improvements, estimated to cost $1,048,100, and found that the company was entitled to a gross annual revenue of $899,732, of which it apportioned $719,602 to be charged against domestic and industrial service, and $180,130 to be paid by the various boroughs and townships served by the company for fire protection.  Complaints as to the new rates were then filed by the appellant boroughs and other municipal divisions.  By a stipulation entered into between the several complainants and the intervening appellee no question was raised on this appeal "concerning the valuation and rate of return, gross and net revenues, and operating expenses of the Springfield Consolidated Water Company fixed in the original proceeding."  The appellants' objections were confined to the commission's action in allotting $180,130 of the revenues of the company to fire protection service, and its apportionment among the various boroughs and townships, receiving such protection.

After a hearing, the commission filed a report dismissing the complaint.  Complainants appealed.

*Errors assigned,* among others, was the following order of the commission:

"This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaints and answers on file and having been duly heard and submitted by the parties, and the commission having adopted a report containing the findings of fact and conclusions therein, and the commission, after due investigation, being of the opinion that the issues involved in these proceedings have been determined by the commission in its order dated April 8, 1918, entered to complaints filed by the Borough of Conshohocken et al., against the Springfield Consolidated Water Company.

"Now, to wit, November 25, 1918, it is ordered: That the complaints in these proceedings be and the same are hereby dismissed."

*Albert N. Garrett,* and with him *James C. Sellers,* for the Borough of Swarthmore, appellant.

*Morton Z. Paul,* for the Boroughs of Sharon Hill and Collingdale, appellants.

*Fred Taylor Pusey,* for the Borough of Lansdowne, appellant.

*J. De Haven Ledward,* and with him *Joseph H. Hinkson,* for the Borough of Ridley Park, appellant.

*William I. Schaffer,* and with him *Montgomery Evans* and *Arthur L. Reeser,* for Springfield Consolidated Water Company, intervening appellee.

*Berne H. Evans,* Counsel, and *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., February 28, 1920:

Complaints were filed with the Public Service Commission by various boroughs and private consumers alleging that the rates charged by the Springfield Consolidated Water Company were unjust, unreasonable, excessive and discriminatory. The complaints were consolidated and hearings had which received widespread publicity. An exhaustive investigation was made of the company's plant and its value for rate making purposes, the cost of operation, the revenue which the company was entitled to receive and its apportionment between municipal and private consumers, or between fire protection and domestic consumption, and all the other matters proper to be considered by the commission for the purpose of fixing an equitable schedule of rates, in the course of which an immense amount of testimony and engineering data was received. A report was filed which one needs only to read to be convinced of the care and thoroughness which the commission gave the whole subject. In this report a schedule of rates was fixed which somewhat reduced the revenues of the company, lowered the rates for domestic consumers very considerably and largely increased the amounts to be paid for fire protection service by various boroughs and townships, which had theretofore paid only $15 per annum for each fire hydrant installed, in accordance with contracts entered into between the parties prior to the passage of the Public Service Company Law. Thereupon a number of the boroughs and townships affected by said order filed complaints alleging that the rates for public fire protection made operative by the order of the commission were excessive, unfair, unreasonable and prohibitive, and illegal because impairing the obligation of the several contracts made between them and the company. After hearing the parties and such proofs as were submitted, the original order was upheld and the complaints were dismissed. From this last order separate appeals were taken by the above-named complain-

ants, but as the same questions are raised in all of them we will consider them together and dispose of them in one opinion.

In its report on the original complaints, the commission fixed the fair value of the company's property for rate-making purposes at $7,203,320, ordered additional improvements estimated to cost $1,048,100, and found that the company was entitled to a gross annual revenue of $899,732, of which it apportioned $719,602 to be charged against domestic and industrial service and $180,130, to be paid by the various boroughs and townships served by the company, for fire protection. In securing this sum, $180,130, for fire protection service, it was necessary to distribute it as equitably as possible among the various municipalities affected, and the plan adopted by the commission was to make a small charge of $7 per annum for every fire hydrant in use, deduct the amount received from this source, plus the revenue received from private fire protection, from $180,130, and divide the remainder by the number of miles of mains four inches and over in diameter which were furnishing fire protection service. The result, $355, represented the amount per mile of assessable pipe, (as before described), within its limits to be charged annually against every borough or township receiving fire protection, and, together with $7 per fire hydrant, fixed the sum to be paid for fire service and fire protection by the several municipal divisions. It is this charge which is complained of in these proceedings.

The stipulation entered into between the several appellants and the intervening appellee, has materially narrowed the scope of our inquiry. Under its provisions no question is raised "concerning the valuation and rate of return, gross and net revenues, and operating expenses of the Springfield Consolidated Water Company fixed in the original proceeding." For the purposes of these appeals, it is thus admitted that the value of the company's property was rightly fixed at $7,203,320, and

that the company was entitled to receive a gross annual revenue of $899,732. The appellants' objections are confined to the commission's action in allotting $180,130 of these revenues to fire protection service and its apportionment of this amount among the several boroughs and townships receiving fire protection service.

In reviewing the order of the commission it is not our province to substitute our judgment as to the rates to be charged for that of the commission or usurp administrative functions committed to it. Power to make the order and not the mere expediency or wisdom of having made it, is the question: Ben Avon Boro. v. Ohio Valley Water Co., 260 Pa. 289, p. 297. The order of the commission in the premises is final unless (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law; or (4) the result of the commission's having arbitrarily fixed the rates contrary to evidence, or without evidence to support it, or in a grossly unreasonable manner. With this chart to guide us we will consider the reasons advanced by the several appellants why the order of the commission is illegal and invalid.

(1) It was not necessary that the appellant boroughs should be made parties to or have special notice of the proceedings under the original complaints. The hearings were held publicly, were widely advertised, were largely attended and were a matter of great public interest. The appellants must have had knowledge of the proceeding—"for this thing was not done in a corner"— and could have intervened and been heard had they so desired. But apart from that, it is not feasible to require that notice of hearings on schedules of rates should be given to every person who may be affected thereby. Otherwise no complaint by a private consumer as to rates could be considered without making every other consumer a party to the proceeding. The rights of the appellants were fully protected by the provisions of article VI, section 14, of the act, authorizing a rehearing,

or by permitting them to file complaints as to the new rates ordered by the commission and to show if possible in the proceedings held in pursuance thereof, the unfairness, injustice, and unreasonableness of the schedule complained of. That they are here as appellants from the order of the commission following such a complaint is the best proof possible that they have not been denied a hearing.

(2) Charges for public fire protection service cannot fairly be computed on the same basis as for domestic or industrial consumption. They are not to be measured by the quantity of water consumed for that may be negligible in amount. Nor should they be reckoned solely by the number of fire hydrants in use. The hydrant is merely the opening through which to deliver the water supplied by the pumping plant and pipe lines, and the number of such hydrants does not fairly determine the cost of the service. The old method of paying the company what the municipality was willing to give has no basis whatever to rest upon. The consensus of modern engineering and accounting opinion is that the amount to be paid for such service should be based on the cost of the plant devoted to public fire protection, in connection with its fair share of the cost of maintenance, operation and depreciation. Where the same pumps, reservoirs and mains are used for both domestic consumption and fire protection, the problem confronting the commission is to apportion the cost of the plant between the two services, for in order to afford adequate fire protection, the pumps, reservoirs, mains, etc., are necessarily larger than would be required for domestic use alone. Just how the apportionment should be made is a scientific not a legal question. A number of methods are in use which appeal differently to different engineers. We are not satisfied that the method adopted by the commission, known as the Peak Load Theory, which divides the cost of the various items of property in proportion to the maximum demand made upon them by the two services,

is unjust or unreasonable. It is used by similar commissions of other states and the appellants have produced no testimony to show that it is wrong in principle. Adopting this theory, from the evidence before the commission, it found that approximately 75 per cent of the total investment in the company's plant was properly apportionable to domestic and industrial service and approximately 25 per cent to fire service; and that 9.6 per cent of the company's operating expenses was applicable to fire protection. Using these percentages, the commission determined that $180,130, or practically 20 per cent of the company's gross revenues should be derived from fire protection service. The appellants have produced no proof that these figures are unjust or unreasonable; indeed a review of the cases where the same question was considered by the commission and commissions in other states shows that the percentage here allotted to fire protection service is not disproportionate. In other states, the proportion fixed to be paid by the municipality varied from 19 per cent to 53 per cent, depending on the particular circumstances of the case. In this State, in Ben Avon Boro. v. Ohio Valley Water Co., the percentage chargeable to fire protection service was 20 per cent; in Portage v. Portage Water Co., 18.7 per cent; in Thayer v. Beaver Valley Water Co., 18.3 per cent; in Boro. of Greensburg v. Westmoreland Water Co., 17 per cent. In Mechanicsburg Boro. v. Gas & Water Co., 246 Pa. 232, which was a suit in equity before the Public Service Company Law was in effect, the finding of the court below, which was not disturbed by the Supreme Court, was that more than 28 per cent of the cost of the plant was properly apportionable to fire protection service. We are not satisfied that the order of the commission in this case was unreasonable, or not in conformity with law, in allocating $180,130 of the gross revenues to fire protection service. If only one municipality had been interested, it would not have been very material how this sum had been obtained, but as

there were many, the next question before the commission was how to apportion this amount between the forty or more municipal divisions concerned. This, as has already been pointed out, was arrived at by deducting from the total amount chargeable to public fire service, a charge of $7 per fire hydrant, plus whatever revenue was received from private fire protection and dividing the remainder by the number of miles of mains (four inches or more in diameter), furnishing fire protection. By this method a small charge is made for installing and maintaining each hydrant and the balance is divided in proportion to the cost of the fire mains within each local subdivision. The result was the schedule adopted, viz: $7 per hydrant, and $355 per mile of pipe as aforesaid. The appellants have shown no fairer or more equitable method of apportioning this large amount among the various municipalities. The same method in principle was adopted in the Ohio Valley Water Company case, the Westmoreland Water Company case, the Beaver Valley Water Company case, and by some commissions of other states. Article VI, Section 23, of the Public Service Company Law provides that the orders of the commission shall be prima facie evidence of the reasonableness thereof and the burden of proving the contrary shall be upon the appellants. This they have failed to do. There is no proof in the case that the order of the commission is excessive, unfair, unreasonable, or discriminatory, as averred by the appellants. The criterion of apportionment is not the risk of fire, but the relative cost of fire protection plant and service within the several municipal divisions. Absolutely exact equity between all the different municipal divisions may not have been attained, but no schedule has been presented that will produce a more equitable result. In any event, the order is not so unreasonable as to justify the interposition of this court.

(3) Complaint is made that the appellants are required to pay for potential service, the order being that

a yearly charge of $355 shall be made "for each mile of pipe 4 inches or greater in diameter in each political subdivision where such pipe furnishes actual or potential fire service." A reading of the commission's report, however, will show that, with the exception of Springfield Township, (Delaware County), which is covered in another opinion, by potential service is meant the capacity or readiness to serve, which must, in all cases, constitute the chief item to be paid for in fire protection. Though it may not actually be called upon to do so, the company must be able and stand ready to furnish sufficient water to fight not only one fire, but many, or even a general conflagration, and therefore, must have and maintain an investment in pumps, reservoirs, and pipe lines in excess of what would be required by the demands of industrial and commercial patrons. Though the dispute in these cases narrows down to a question as to how the burden of paying for public fire protection shall be distributed among the various municipal divisions served by the company, the report shows that in this apportionment of cost only pipes or mains which are used for fire protection service are counted, about 134 miles of force and supply mains and distribution pipes not being considered assessable for the purpose of distributing the cost of fire service.

(4) It would seem that the question whether the Public Service Commission may set aside a contract with a public service corporation which provides for the payment of an unfair, unreasonable, preferential, or discriminatory rate, has been definitely settled in this State. It is an exercise by the State, through its duly constituted agent, of the police power, which the Constitution declares "shall never be abridged or so construed as to permit corporations to conduct their business in such a manner as to infringe the equal rights of individuals or the general well-being of the State." This power of the commission is distinctly recognized in Klein-Logan Co. v. Duquesne Light Co., 261 Pa. 526,

relative to a contract for a definite time, and in Mt. Union Boro. v. Mt. Union Water Co., 63 Pa. Superior Ct. 337, (affirmed in 256 Pa. 516), where the rates complained of were in excess of those provided for in the borough ordinance granting the company the right to use its streets. In St. Clair Boro. v. Tamaqua, etc., Ry. Co., 259 Pa. 462, it was held that the Public Service Commission, rather than a court of equity, had jurisdiction in an inquiry as to the reasonableness of the rates of a street railway company, even as against an ordinance imposing a rate of fare in consideration of the borough's consent to an extension of the company's line. If the contract was valid irrespective of its reasonableness, courts of equity would still have jurisdiction: Bellevue Boro. v. Ohio Valley Water Co., 245 Pa. 114, p. 117. In V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523, it was distinctly ruled that a contract for a definite period which gave one customer of a public service company an unjust, preferential rate was rendered inoperative by the Public Service Company Law and could be set aside by the commission. And in Leiper v. B. & P. R. R. Co., 262 Pa. 328, it was held that this power of the commission extended to contracts either for a definite or indefinite period and whether entered into with a municipality, a private corporation, or an individual. The clause of the act, (article V, section 29), which it is claimed preserves the efficacy of these contracts expressly excepts the previous provisions which confer on the commission power to determine the just, due, equal, and reasonable rates to be charged by public service companies and to prevent the enforcement of unjust, unreasonable, discriminatory and preferential rates. In the cases in which such contracts were upheld prior to the Public Service Company Law the right of the State to set aside such unfair and preferential rates under the police power was not in question nor considered. The contracts in these cases were not entered into in pursuance of conditions contained in ordinances

granting the company the right to lay pipes in the streets. The rates which they provide, if unreasonable and preferential, have no higher standing than an unjust, unreasonable, and preferential contract with an individual or a private corporation. Moreover, all of the contracts, except one, had expired prior to the filing of the original complaints and at a time when the Public Service Company Law was in effect. The clauses contained in the contracts relative to their renewal after that date were subject to the provisions of the act and could only be made effective legally when submitted to and approved by the commission.

(5) There is no merit in the contention that the order of the commission is equivalent to a levy of taxes upon the borough. It is a determination of the fair, just and reasonable amount which the borough should pay for the fire protection service which it is receiving by its own motion. The commission no more levies a tax upon it than does a jury in an action against a borough upon a contract or in trespass.

(6) Nor does the Public Service Company Law violate Article III, Section 20, of the Constitution, which forbids the general assembly delegating to any special commission, private corporation or association any power to make, supervise or interfere with any municipal improvement, money, property or effects, or to levy taxes or perform any municipal function whatever. The Public Service Commission is not a special commission within the meaning of this section of the Constitution and the commission has not the power or authority to usurp, and is not usurping, any municipal power or function, which is the thing forbidden.

(7) Nor is it material that the several boroughs have not provided for the payment of the amounts they are respectively required to pay under the order of the commission in the budget for the year.

The verdict of a jury in a suit on a contract is not invalid because its payment had not been provided for in

advance. Whatever deficit may exist after payment of the sum appropriated can be provided for in a subsequent year. And if the sums necessary to provide for the administ-ation of the borough's business cannot be raised by the tax rate allowed by law, upon that fact being presented to the county commissioners and assessors, the assessment may be raised to the full value required by law, or there may be a readjustment of the borough's expenditures. There is no reason why the water company should bear the burden to the exclusion of the other elements of borough administration.

On a full review of the appeals, we are not satisfied that the order of the commission, in so far as it affects the present appellants, was unconstitutional, unlawful, arbitrary or unreasonable, and the appeals are accordingly dismissed at the costs of the several appellants.