# City of Philadelphia, Appellant, *v.* Public Service Commission.

*Public Service Company Law — Public Service Commission — Street railways—Rates—Reasonable return—Valuation.*

The Public Service Commission has the power to permit a street railway company to file a new schedule of rates within less than three years after the determination of the previous rate.

When the evidence submitted in support of the new rate established that the company was not receiving a revenue sufficient to earn a proper return on the minimum valuation fixed in the former determination, and that the income from the new rate would not exceed its allowable gross revenue, an order permitting the filing of a new schedule is reasonable and in conformity with law.

A finding of the Public Service Commission that the valuation of a street railway company was "substantially upwards of $200,-000,000," not objected to by the company, was held, in the circumstances of this case, to be a sufficiently definite valuation for the purpose of ascertaining a rate basis.

On a complaint against a rate schedule, it is the duty of the commission at all times to guard the interests of the public, but this is to be done in no spirit of partisanship, or hostility to public service corporations. It is required to do justice to the corporation no less than to the public. Its orders should be fair, just and reasonable to all concerned. When the city in its efforts to protect the public, has, at great expense, engaged engineers of resource and ability, and employed a staff of learned and skillful attorneys, to examine into the claims of the company and see that it is allowed only what is fair, just and reasonable, the commission may assume that everything will be done by the city's representatives that is necessary or advisable to protect the public, and it is not called upon to assign its own engineering force to the task or hire experts for that purpose. Engineers or experts employed by the commission to assist in such valuation must present the result of their investigations in the form of evidence and be subject to examination and cross-examination as any other witnesses. It is reversible error for the commission to receive and act upon their reports in any other manner. Nor is the commission in any respect bound by the findings of its own engineers or experts so received in evidence. It would be evidence received by them along with other evidence, but in no way conclusive upon them. The order of the

commission must be final and based upon its own conscientious and untrammeled judgment on the evidence.

Argued October 8, 1924.    Appeals, Nos. 269 and 271, Oct. T., 1924, by complainants, from report and order of the Public Service Commission in the case of City of Philadelphia et al. v. Philadelphia Rapid Transit Co., Application Docket No. 11417.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Complaint against increased schedule of rates filed by the Philadelphia Rapid Transit Company.

The facts are stated in the opinion of the Superior Court.

The commission issued the following order:

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon petition and answers on file, and testimony of the petitioner having been concluded, and the commission having made certain findings and determination as evidenced by its report made a part hereof;

Now, to wit, September 8, 1924, it is ordered: That the Philadelphia Rapid Transit Company be and the same is hereby permitted to file with this commission, and become effective on five days' notice to the public, the tariff schedule accompanying the petition filed in this case; said tariff schedule, however, to continue in effect temporarily pending the completion of the development of the testimony in this case and the final determination of this commission with respect thereto.

It is further ordered: That the Philadelphia Rapid Transit Company shall, not later than the fifth day of each succeeding month, file with this commission and submit to the parties of record a report or statement setting forth in detail the gross operating revenue and expenses for the calendar month immediately next preceding.

It is further ordered : That the secretary set this case down for further hearing upon receipt by him, from the City of Philadelphia, of the advices hereinbefore indicated.

*Error assigned* was the order of the commission.

*Joseph P. Gaffney,* City Solicitor, and with him *John B. Gest, Robert F. Irwin, Jr.,* and *Ernest Lowengrund,* Assistant City Solicitors, for the City of Philadelphia.

*C. Oscar Beasley,* and with him *Howard E. Heckler,* for the United Business Men's Association, Appellant.

*Samuel Feldman,* for Maurice Weisblum, Intervening appellant.

*Frederic L. Ballard,* and with him *T. D. Nesbit, C. J. Joyce,* and *James Gay Gordon,* for Philadelphia Rapid Transit Company, appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY KELLER, J., December 5, 1924 :

The interest of several million people of this Commonwealth in the subject-matter of this appeal and the importance of its just determination, both to the public and the utility company involved, are sufficient warrant for the extended arguments of counsel which were presented to this court, and the careful consideration which the court has given them in the light of the evidence in the record.    The legal principles to be applied, however, are not affected by the number of persons interested in the litigation.    There is not one law for the many and another for the few.    The questions to be decided by this court are:    (1) Did the commission have the power

to make the order appealed from? (2) If so, was the order reasonable and in conformity with law? (Public Service Company Law, article VI, section 22). And in the determination of this latter question the act specifically provides, (article VI, section 23), that "the orders of the commission shall be prima facie evidence of the reasonableness thereof and the burden of proving the contrary shall be upon the appellant or appellants."

To understand fully the facts pertinent to this appeal it is necessary to go back to the prior litigation with which it is connected.

On June 1, 1920, Philadelphia Rapid Transit Company, the intervening appellee, (hereinafter called the Company), filed a tariff designed to effect an increase in its revenues, through the abolition of free transfers. The City of Philadelphia, (hereinafter called the City), filed a protest against this schedule and asked for a valuation of the Company's property with a view of determining the fair and just revenues which the Company was entitled to receive. While this hearing was in progress, the commission, being satisfied that the Company urgently needed a greater revenue, on October 18, 1920, issued a temporary order, effective for six months from November 1, 1920, directing the Company to file a tariff providing for a seven-cent cash fare, (four tickets for twenty-five cents), with transfer and exchange privileges as theretofore. As the hearing was still in progress at the expiration of this interim period, the Company then posted, filed and published a tariff continuing the rates originally prescribed by the commission, and proceedings on the protest of the City, and certain civic bodies which had intervened as protestants, were continued as if the same were transferred and applicable to the new tariff. These proceedings lasted nearly three years. The record of the hearings comprises more than six thousand pages of testimony and more than twenty-one hundred pages of exhibits. It contains extensive data relative to valuation, income, and operating ex-

penses. The Company prepared an elaborately itemized inventory of all its property used and useful in the public service, which was rigidly scrutinized, checked up and corrected, where it was deemed inaccurate, by the City's corps of experts. This inventory forms the basis of the estimate of the cost of reproduction of the Company's property referred to later. The cost of the proceeding to both City and Company was very great.

On June 21, 1923, the commission filed its report finding the then fair value of the Company's property to be substantially upwards of [synonymous with "more than, above," Century Dictionary, Webster's Dictionary] $200,000,000, on which it held the Company to be entitled to a fair return of 7% per annum or $14,000,000, plus operating expenses of $30,868,000, as per the Company's budget, and taxes, $2,818,000, or an allowable annual gross revenue requirement of $47,686,000. As the operating revenue for the year 1922, under the seven-cent rate (four tickets for a quarter) was only $42,530,000, and the unimpeached estimate of such revenue for the year 1923 was only $44,736,000, the commission determined that the rate thus established under its order of October 18, 1920, was not unjust or unreasonable and dismissed the complaints. From this order, the complainants appealed to this court, which on February 29, 1924, dismissed the appeal. See Phila. v. P. S. C., 83 Pa. Superior Ct. 8.

On July 21, 1924, the Company filed with the commission an application for permission to increase the rate of fare from seven cents, (four tickets for twenty-five cents), as fixed by the order of October 18, 1920, to eight cents, (two tickets for fifteen cents), to be accompanied by the substitution of free transfers for three-cent exchanges outside of a specified central delivery district, and certain zoning changes in outlying districts.

This application was made pursuant to the requirement of the Public Service Company Law (article II, section 1[f]), that no rate which has been determined

by the commission shall be changed by a public service company within a period of three years after such determination without application to and the approval of the commission. Had three years elapsed since the order of the commission the Company could have increased its rate, effective on thirty days' notice, without application to the commission, and such increased rate would have been collected pending any objections filed against it, until it was determined by the commission whether it was just and reasonable: Coplay Cement Co. v. P. S. C., 271 Pa. 58.

Objections to the Company's application were filed by the City and the United Business Men's Association, the other appellant, (hereinafter called the Association), and a hearing was had before the commission lasting nearly a week, in the course of which over four hundred pages of testimony were taken and all witnesses produced by the Company and the Association were examined and cross-examined at length. There was no disposition manifested on the part of either the City or the Company to disturb or reopen the commission's finding that the fair value of the Company's property was substantially over $200,000,000; neither party vouchsafed any objection to the chairman's statement that such a course, involving a waste of all the effort and money spent in the prior investigation, was not contemplated by the commission. But counsel for the City requested a postponement of the hearing in order that it might have opportunity to investigate more fully the evidence presented as to the Company's operating expenses—which was the sole target of attack in this proceeding,—and stated that three weeks was the shortest possible time within which it could hope to make such investigation, and that a further postponement would probably be necessary. The commission held the matter under advisement until September 8, 1924, and then issued an order allowing a continuance of the hearing until such time as those opposing the rate

were ready to proceed, but having regard to the immediate financial needs of the Company, granted it provisional permission to put into effect its proposed schedule of rates until the investigation could be completed and a final decision rendered. From this order both the City and ⁺he Association have appealed.

Taking up the legal questions before us, we have no doubt of the power of the commission to make a temporary order with regard to rates, during the pendency of a fuller investigation. It was expressly so decided in City of Scranton v. P. S. C., 73 Pa. Superior Ct. 192. We there said: "All orders of the commission are to an extent temporary, in that they may be changed by the commission as conditions warrant." And to exercise such power it is not required that the utility company should be threatened with absolute bankruptcy if withheld. The commission need only be satisfied that injustice will be done if action is unduly deferred. In some instances, as in the temporary order of October 18, 1920. such an order is of value in the pending investigation, because it substitutes for mere estimates of income, the concrete results obtained from actual operation, so that if the result exceeds the estimate to such an extent as to produce a larger revenue than is allowable on the basis of the property used and useful in the public service, the tariff should be reduced in the final order or decision so as to accord with the allowable revenue.

We come, then, to the second issue presented by this appeal—"Was the order reasonable and in conformity with law?" and as before stated, under the express terms of the statute, the burden rests on the appellants of proving the contrary. It must be borne in mind that no question of the confiscation of the utility company's property by the order appealed from is raised by this appeal, and, therefore, it is not our province to exercise our own independent judgment upon the facts in evidence and substitute our judgment thereon for that of the commission: Scranton v. P. S. C., 80 Pa. Superior

Ct. 549; or usurp administrative functions committed to it: Lewistown v. P. S. C., 80 Pa. Superior Ct. 528. In the absence of such an issue of confiscation our Supreme Court has said that the orders of the commission are final unless (1) beyond the power which it could constitutionally exercise; or (2) beyond its statutory power; or (3) based upon a mistake of law; or (4) the commission acted so arbitrarily and unjustly as to fix rates contrary to evidence, or without evidence to support it, or in a grossly unreasonable manner: Ben Avon v. Ohio Valley Water Co., 260 Pa. 289, 297; Lansdowne v. P. S. C., 74 Pa. Superior Ct. 203, 209. Rate making is a legislative, not a judicial, function, and in doing it the commission acts as the representative of the legislature, not of the judiciary or the executive.

At the hearing before the commission the burden of proving that the proposed increase of rates was justified rested upon the Company and was met by evidence which made out a prima facie case. This prima facies may be rebutted or overcome by the appellants, when they have completed their investigation, by evidence showing that the amount allowed for operating expenses is too high; but when the hearing adjourned the burden resting on the company had been met. It showed that the actual gross revenue produced by the seven-cent fare in 1923, was over $2,400,000 less than the allowable gross revenue above mentioned ($47,686,000); that the operating revenue for 1923 was nearly $500,000 less than the figures estimated for that year when the order of June 21, 1923, was entered; that so far from there having been the expected gradual increase of operating revenue which would bring the Company's income up to approximately the level of the allowable gross revenue, the income from car riders had fallen off markedly since May, 1924, and was still below the figures for the corresponding months of 1923; that the rental to be paid by the Company to the City for operating the City-owned Frankford elevated line, under the agreement approved

by the commission, was $156,000 more in 1924 than in 1923 and would be $312,000 more in 1925 than in 1923; that under the wage agreement with the Company's employees, which had been before the commission in connection with the prior proceedings, the wages in 1925 would have to be increased over two million dollars—exclusive of any contribution to the so-called "Co-operative Wage Fund" or 10% wage dividend, as to which we agree with the contention of the City solicitor, that it is not a proper charge against operating expenses, and constitutes no element to be considered in fixing a schedule of rates or tariff, but must be provided for, if at all, out of the Company's fair return on investment; that even with the increased rate of fare asked for, the Company would not receive gross income in excess of what the commission had determined in 1923 it was entitled to receive; that the budget for operating expenses, now the only remaining object of attack, had been carefully scrutinized in the prior hearing and sustained, which while, not conclusive as to the result of the present investigation, was at least entitled to some weight in considering the present application. These things and others which it is not necessary to refer to in detail constituted evidence upon which the order of the commission might be based, and the evidence was of a character so substantial that no court could declare an order founded upon it to be illegal or grossly unreasonable.

But the learned attorney for the association appellant attacks the force of this supporting evidence by asserting that the report of June 21, 1923, did not amount to a valuation and that there was, therefore, no valid finding as to the allowable gross revenue which the Company was entitled to receive. We cannot agree to this proposition. It is true that in its report the commission said: "We do not find it necessary in this proceeding to arrive at a final determination of the present fair value of the property of the Company," but this was im-

mediately followed by, "However, our consideration of the items of evidence before us, including the questions of depreciation and going concern value and of matters in dispute between the Company and the City, lead us to the conclusion that under established legal principles the present fair value of the Company's property is substantially upwards of [i. e. above] $200,000,000." This paragraph came as the conclusion of a long discussion of the matters in dispute between the parties to the litigation, as to the value of the Company's property, and in the light of the rest of the report and the fixing by the commission of a fair annual return to the Company of 7% on $200,000,000 or $14,000,000, can have no other meaning than that the commission found that the value of the Company's property used and useful in the public service was substantially more than $200,000,000; but how much more, it was not necessary definitely to determine because even on that valuation the rates complained against were fair and reasonable.

There is no statutory requirement that the commission shall in all cases fix a definite valuation of a utility company's property whenever there is a complaint filed against its rates. The statute gives it power to do so when deemed necessary [article V, section 20(a)] but does not impose it as a requirement; and our Supreme Court has expressly held that it is not in all cases necessary: New Street Bridge Co. v. P. S. C., 271 Pa. 19. See N. & W. Ry. Co. v. W. Va., 236 U. S. 605; Foltz v. P. S. C., 73 Pa. Superior Ct. 24. As was well said by Judge Linn when the prior order was before us on appeal (83 Pa. Superior Ct. 8): "If in the course of its inquiry, the commission finds, as it did in this case, that it has sufficient evidence to act finally, nothing can be gained by thereafter wasting time and money in unnecessary investigation." But the fact that a definite and completed determination of value has not been deemed necessary by the commission does not render abortive and of no value its orders and de-

terminations in so far as they are findings of value supported by evidence and sufficiently specific to be passed upon in the light of the evidence.  In other words, a finding based upon competent evidence, sufficiently specific to pass the legal tests, that a company's property is valued at more than two hundred million dollars, is not to be cast aside as of no weight for any purpose because the commission does not find the exact amount by which the company's property exceeds that sum.  The only party hurt by the failure definitely to fix the sum over and above two hundred million dollars is the utility company and if it does not complain, the other party, who has suffered no injury by this action, cannot be heard to say that it is no finding at all.  Practically the same course was adopted by this court in Ben Avon Boro. v. Ohio Valley Water Co., 75 Pa. Superior Ct. 290, 295, and Beaver Valley Water Co. v. P. S. C., 76 Pa. Superior Ct. 255, 272, and was affirmed by the Supreme Court; see 271 Pa. 346 and 271 Pa. 358.

The case of Erie City v. P. S. C., 278 Pa. 512, is cited as authority for holding that the order of the commission was in no sense a valuation; but the facts in the two cases are not alike; the issues were very different.  In that case the Pennsylvania Gas Company filed a tariff largely increasing its rates.  Complaints were filed by several municipalities interested and a hearing had.  A valuation of the Company's property was undertaken by the commission.  An engineering conference was organized which was participated in by representatives of both the Company and the complainants.  This body prepared an inventory and submitted a report agreed to by all members, showing reproduction cost of the physical properties, plant equipment, pipe lines and appurtenances.  It was received, accepted and approved by the commission.  The conference could not agree upon the value of the gas holdings, working capital, bond discount and brokerage, capital requirements, depreciation and going concern value.  As to the gas holdings

the Company's witnesses valued the proportion attributable to Pennsylvania, (73%), at from $8,000,000 to $10,000,000. The municipalities contended that the proper value of such holdings was their cost, and presented no testimony as to their present market value. With no other evidence before it the commission valued the gas holdings attributable to Pennsylvania at $5,500,000. The remaining items of value it lumped at $8,800,000, which was $4,000,000 less than the value fixed by the joint conference of engineers for the reproduction cost of the agreed items. No amount was fixed for accrued depreciation on the physical plant or for going concern value, nor the relative proportion of the one to the other determined—but a lump valuation was arrived at which could not be checked or audited, or from it be determined which items in the enginering report had been decreased or how much was allocated to any item. The commission, using this lump sum valuation as a base made an order materially decreasing the Company's rates, and the Company appealed. The issue of confiscation was directly involved. The Supreme Court criticized the fixing of real estate values without evidence to support them, and the adoption of a lump sum value, and ordered a rehearing; but it recognized that "the commission's findings need not set forth the value of each separate piece of property" (p. 533). It is nowhere intimated that had the commission adopted in its report the total fixed by the engineering conference, it would not, as to the items agreed upon by said conference, have been sufficiently definite and specific.

The facts relating to the valuation in this case are widely different. A most complete and detailed inventory of the Company's property with the cost of reproduction as claimed by it, as of its date, (June 30, 1919), was carefully examined and checked up by the City's engineers, with the following result, which at the risk of being prolix, is here set forth by totals.

| Item | Company's Valuation | City's Valuation |
|---|---|---|
| Right-of-way | $2,021,643 | $1,737,043 |
| Other land used in railway operation | 6,179,075 | 4,054,716 |
| Grading | 4,277,231 | 2,787,316 |
| Ballast | 573,776 | 573,776 |
| Ties | 3,040,366 | 3,007,109 |
| Rails, rail fastenings & joints. | 8,690,960 | 8,670,565 |
| Special work | 4,860,671 | 4,860,671 |
| Track & roadway labor | 6,558,225 | 5,398,686 |
| A.  Paving | 25,872,754 | 11,193,803 |
| Roadway machinery & tools | 170,102 | 170,102 |
| Subway and elevated | 24,145,267 | 24,076,359 |
| Bridges, trestles & culverts | 1,114,921 | 757,266 |
| Crossings, fences & signs | 1,459,434 | 752,795 |
| Signals & interlocking apparatus | 287,288 | 287,288 |
| Telegraph & telephone lines | 185,592 | 177,886 |
| Poles & fixtures | 2,955,511 | 2,832,903 |
| Underground conduits | 4,344,675 | 4,344,675 |
| Distribution system | 5,470,866 | 5,356,049 |
| General office buildings | 222,380 | 222,380 |
| Shops & car houses | 8,164,153 | 8,164,153 |
| Stations & misc. buildings | 2,515,845 | 2,489,268 |
| Wharves & docks | 472,344 | ........ |
| Track drains | 254,649 | 241,852 |
| Passenger & combination cars. | 21,533,382 | 21,533,382 |
| Freight, express & mail cars | 149,362 | 110,354 |
| Service equipment | 1,172,712 | 1,057,362 |
| Electric equipment of cars | 11,143,318 | 11,143,318 |
| Shop equipment | 1,195,215 | 1,195,215 |
| Furniture | 286,631 | 286,631 |
| Miscellaneous equipment | 262,205 | 262,205 |
| Power plant buildings | 2,809,564 | 2,809,564 |
| Substation buildings | 1,229,729 | 1,165,582 |
| Power plant equipment | 8,264,601 | 8,264,601 |

| Item | Company's Valuation | City's Valuation |
|---|---|---|
| Substation equipment ....... | 3,447,479 | 3,429,276 |
| Transmission system ........ | 1,415,633 | 1,408,040 |
| Unused property ........... | 4,009,137 | 452,059 |
| Engineering .............. | 6,787,377 | 5,810,970 |
| Organization prior to construction ..................... | 2,500,000 | 2,000,000 |
| Administrative & legal ...... | 5,976,484 | 5,084,599 |
| Taxes ................... | 1,650,000 | 800,000 |
| B.　Interest during construction ................... | 22,329,736 | 15,896,892 |
| C.　Loss of interest during early yrs. ............... | 15,013,644 | ......... |
| Working capital ........... | 4,740,374 | 3,755,414 |
| D.　Financing ............. | 22,975,431 | 8,931,111 |
| E.　Going value ........... | 38,000,000 | ........ |
| Total as of June 30, 1919.. | $290,729,742 | 187,553,326 |

It will be noticed that there was no dispute between the several engineers as to items totaling $64,117,961. As to the rest they disagreed, though, as to many items the differences were not great, and the commission was justified in stating: "It is not surprising to find that with regard to the inventory so carefully prepared by the Company, the City has no substantial dispute, and as to the unit and total prices applied to many items of that inventory the parties are in substantial agreement." The City's chief contention was that the valuation should be based on the historical cost or cumulative investment rather than the present value of the property, a proposition that was emphatically refuted in the Erie case (pp. 521, 526).

With an admitted reproduction cost new of at least $187,553,326, as of June 30, 1919, the commission took up for consideration the outstanding items of difference,

which we have marked with the capital letters A, B, C, D, and E.

With respect to "Paving" (A), the commission sustained the City's contention and disallowed the excess claimed by the Company. As to "Interest during construction" (B), the commission in effect adopted the Company's estimate, increasing the admitted valuation by $6,000,000. On the item "Loss of interest during early years" (C) the Company claimed one full year's interest at 8%—$15,000,000; the City admitted nothing —the commission allowed interest at 7%, or in round figures $13,000,000.

As to "Cost of financing" (D) the estimates varied by $14,000,000, the Company claiming a rate of 10%, the City allowing 5%. The commission determined that $7\frac{1}{2}\%$ was a proper allowance. This amounts to an increase of about $7,000,000 over the City's figures. The commission's determination of these four items resulted in an increase of the City's figures for reproduction cost new, without considering depreciation or going concern value, of approximately $26,000,000, and justified the commission's conclusion: "It is apparent from this discussion of these four disputed items that the City's admitted figure of reproduction cost of $187,000,000 must be very materially increased, certainly to a point substantially upwards of $200,000,000."

The commission then proceeded to consider the remaining items of greatest difference, viz: accrued depreciation and going concern value (E), and while not definitely fixing the percentage of the one or the exact value of the other, it discussed these subjects at length and held that the evidence established a minimum of depreciation (that is, that the physical plant was "in a high state of efficiency for operation," the complaint being that the property was being "over-maintained rather than under-maintained") and a maximum of going concern value, and that the latter substantially offset the former in any adjustment of the figures obtained

by physical valuation, and concluded: "Therefore, weighing these two questions against each other, we have reached the conclusion that the net result would be to increase rather than diminish that amount."

While the commission was bound to consider present reproduction cost, in determining the valuation of the Company's property, (Missouri ex rel. S. W. Bell Tel. Co. v. P. S. C., 262 U. S. 276; Bluefield Water Works, etc., v. P. S. C. of W. Va., 262 U. S. 679), it was not obliged to adopt such cost as the exact measure of present value (Georgia Ry. & Power Co. v. R. R. Com. of Ga., 262 U. S. 625).

The commission then went on to state that the inventory and appraisement were made as of June 30, 1919, and the figures hereinbefore given therefore excluded additions to capital since made and any increases in unit costs, although noting that the trend of prices was again upward. The commission very properly did not consider the rentals paid underlying street railway corporations for the Supreme Court had expressly decided that it had no power to do so: Citizens Pass. Ry. Co. v. P. S. C., 271 Pa. 39, 57.

With this full and complete discussion and itemized finding of values, how can it be said that there has been no valuation of the Company's property for any purpose? While the commission did not determine with mathematical accuracy the present fair value of the property, it did determine that its minimum value was above $200,000,000 and the finding was supported by evidence permitting a check and audit of the items of which it was made up. The only party injured, if at all, by the failure to fix the exact valuation of the Company's property was the Company itself; and it made no complaint because its tariff of rates had been sustained. Certainly the City and the public using the cars were not prejudiced by the failure of the commission to determine precisely how much more than $14,000,000 the Company was entitled to receive as a fair annual return

upon its property used and useful. And in the present proceeding the learned City solicitor, who has presented this case with much force and ability did not seek to re-open that feature of the former adjudication but limited his attack to the subject of operating expenses.

The intervening appellant, Mr. Weisblum, who attended none of the hearings before the commission contends that it erred because, in considering this application it did not of its own motion re-open the valuation proceedings and definitely fix the value of the Company's property; on the theory that unit costs have so receded since the prior investigation as to require such action for the protection of the public. It is sufficient to say that there is no evidence in the case that prices to-day are so much lower than unit costs in force June 30, 1919, as to require the results of the prior investigation of values to be set aside; and there has been no such marked reduction as to put the commission or this court upon judicial notice of it. But the suggestion involves other considerations. It is the duty of the commission at all times to guard the interests of the public, but this is to be done in no spirit of partisanship, or hostility to public service corporations. It is required to do justice to the corporation no less than to the public. Its orders should be fair, just and reasonable to all concerned. When the City in its efforts to protect the public, has at great expense, engaged engineers of resource and ability, and employed a staff of learned and skilful attorneys, to examine into the claims of the Company and see that it is allowed only what is fair, just and reasonable, the commission may well assume that everything will be done by the City's representatives that is necessary or advisable to protect the public, and it is not called upon to assign its own engineering force to the task or hire experts for that purpose. If the commission were obliged to make its own independent investigation in every one of the litigated cases that come before it, the revenues of the State would have to be swelled ma-

terially to pay for this additional cost or the delay incident to such action would render the commission of little practical use to the Commonwealth. Where there are able and skilful counsel and engineers representing the public in rate cases, the commission is justified, for the most part, in leaving the active defense of the public's interests to their special representatives and is not usually called upon to employ additional engineers to make independent examinations or check up the work done on behalf of the public. It must not be overlooked that any engineer employed by the commission to assist in such valuation must present the result of his investigations in the form of evidence and be subject to examination and cross-examination as any other witness. It would be reversible error for the commission to receive and act upon his report in any other manner: Erie City v. P. S. C., supra, pp. 527, 528; P. R. T. Co. v. P. S. C., 78 Pa. Superior Ct. 593; P. R. R. v. P. S. C., 69 Pa. Superior Ct. 404. Nor is the commission in any respect bound by the findings of its own expert or engineer so received in evidence. It would be evidence, proper to be considered by them along with all the other evidence, but in no way conclusive upon them. The order of the commission must, finally, be based upon its own conscientious and untrammeled judgment on the evidence.

The only subject remaining for us to consider is the contention of the City that the commission based its report and order in this case in part upon the unsupported statements of counsel and therefore violated the rule just above referred to. A careful reading of the report in the light of the evidence fails to convince us that the report is open to this objection. It is the province of counsel to draw any fair inference or deduction from the evidence of which it is capable and to lay stress or emphasis upon such facts and inferences as may seem to be relevant and important in the issue. They may not by way of argument introduce as evidence facts not in the record but they may discuss the testimony and

draw from it all inferences and conclusions fairly deducible therefrom. If such were not the case oral arguments and printed briefs would not be receivable at all and commission and court would have to struggle, unaided, with the printed record; and in the present appeal we would have been deprived of the very helpful arguments and briefs of the learned counsel who appeared before us. Viewed in this light, we find nothing in the statement of the commission complained of which requires a reversal of its order. Counsel merely emphasized what was inherent in the Company's evidence, viz: the growing lack of sufficient revenue under the seven-cent fare and the hardship to the Company of having to continue it during a protracted hearing.

The assignments of error are all overruled, the appeals are dismissed and the order of the commission is affirmed.